ISABELLE ORD (SBN 198224)
isabelle.ord@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

MATTHEW C. DANAHER (SBN 351055)
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Telephone: 858.677.1400
Facsimile: 858.677.1401

Attorneys for Defendant
RETAIL SERVICES & SYSTEMS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JEFFREY KENT and ROBIN SAVAGE, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

RETAIL SERVICES & SYSTEMS, INC.,

Defendant.

Case No. 3:26-cv-06419-RFL

**DEFENDANT RETAIL SERVICES & SYSTEMS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES**

Judge: Hon. Rita F. Lin
Courtroom: Courtroom 4
San Francisco Courthouse
450 Golden Gate Avenue
17th Floor
San Francisco, CA 94102
Date: December 8, 2026
Time: 10:00 a.m.

Complaint Filed: June 26, 2026

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

PLEASE TAKE NOTICE THAT on December 8, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Rita F. Lin, United States District Judge, Northern District of California, located at San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 4, 17th Floor, San Francisco, California 94102, Defendant Retail Services & Systems, Inc. ("Total Wine") will, and hereby does, move for an order compelling the claims of Plaintiff Robin Savage ("Savage") to individual binding arbitration and staying this action pending arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2-3. Savage agreed to arbitrate her disputes with Total Wine by agreeing to Total Wine's Terms & Conditions ("Terms") through her conduct in identifying Total Wine's February 2024 Terms as an agreement to arbitrate to commence a prior arbitration against Total Wine and then voluntarily initiating and materially participating in that arbitration involving the same claims as here. Savage thereafter failed to timely seek judicial relief as to the question of arbitrability, and is now barred from doing so and from bringing this action. Savage separately agreed to arbitration because, after agreeing to the Terms in 2016, she was on constructive notice of updates to the Terms, including updates informing her that Total Wine included an arbitration clause. The parties' agreement to arbitrate (the "Arbitration Agreement") expressly delegates the question of arbitrability to the arbitrator and precludes Savage from proceeding with her claims in court. In the event the Court finds Savage's claims are not arbitrable, Savage agreed under multiple versions of the Terms to resolve disputes in Maryland under Maryland law, requiring severance and transfer of her claims to Maryland.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Isabelle Ord ("Ord Decl.") and Matthew Vorcheimer ("Vorcheimer Decl."), Total Wine's concurrently filed Motion to Dismiss, the pleadings, papers, and records filed in this case, and such other and further evidence and oral argument as may be presented at the time of hearing or otherwise.

Dated: August 28, 2026

DLA PIPER LLP (US)
By: <u>/s/ *Isabelle Ord*</u>
ISABELLE ORD
*Attorneys for Defendant*
*RETAIL SERVICES & SYSTEMS, INC.*

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....................................................................................................1

II. STATEMENT OF FACTS ........................................................................................2

A. Savage Voluntarily Initiates and Participates in the Prior Arbitration ....................2

B. The Total Wine Website ........................................................................................3

C. Savage Creates an Online Account and Accepts the Terms ...................................3

D. Total Wine Adds an Arbitration Clause and Class Action Waiver .........................4

E. Total Wine Updates Its Cookie Banner ..................................................................5

F. Savage Re-Visits the Website in 2023....................................................................6

III. ISSUES TO BE DECIDED .......................................................................................6

IV. LEGAL STANDARD................................................................................................6

V. ARGUMENT.............................................................................................................7

A. Savage Agreed to Arbitration by Invoking the Terms to Initiate Arbitration..........7

B. Savage Agreed to Arbitration by Voluntarily Initiating Arbitration .......................8

C. Savage Agreed to Arbitration by Prosecuting Her Arbitration................................9

D. Savage Waived Her Ability to Seek Judicial Intervention on Arbitrability ............9

E. Savage Agreed to Arbitration Because She Was on Constructive Notice of the Terms and the Arbitration Agreement ..........................................................10

F. The Terms Delegate Questions of Arbitrability to the Arbitrator..........................11

G. The Action Should Be Stayed Pending Arbitration..............................................13

H. Savage Agreed to Maryland Choice of Law and Venue.......................................13

VI. CONCLUSION.......................................................................................................14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alba v. Harbor Freight Tools USA, Inc.*,
2026 WL 2161637 (N.D. Cal. July 27, 2026)....13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....6

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013)....14

*Benson v. Casa De Capri Enters., LLC*,
980 F.3d 1328 (9th Cir. 2020)....7

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015)....7, 12

*Broomes v. FullBeauty Brands Operations, LLC*,
2025 WL 3548680 (N.D. Cal. Dec. 11, 2025) (Lin, J.)....12

*Collier v. New York*,
2006 WL 8442757 (C.D. Cal. Nov. 1, 2006)....8

*Collier v. SP Plus Corporation*,
889 F.3d 894 (7th Cir. 2018)....9

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985)....7

*Fortune, Alsweet & Eldridge, Inc. v. Daniel*,
724 F.2d 1355 (9th Cir. 1983)....9, 10

*Garcia v. Amazon.com Servs. LLC*,
2021 WL 2954088 (C.D. Cal. May 25, 2021)....8

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024)....10

*Gvozdenovic v. United Air Lines, Inc.*,
922 F.2d 1100 (2d Cir. 1991)....9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....12

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)....7

*LaCross v. Knight Transp., Inc.*,
95 F. Supp. 3d 1199 (C.D. Cal. 2015)....14

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)....6

*Morris v. Rent-A-Center, Inc.*,
2020 WL 1631203 (N.D. Cal. Apr. 1, 2020)....12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....7, 12

*Nghiem v. NEC Elec., Inc.*,
25 F.3d 1437 (9th Cir. 1994)....8, 9, 10

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013)....12

*Roderick v. Mazzetti & Assocs.*,
2004 WL 2554453 (N.D. Cal. Nov. 9, 2004)....8

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016)....13

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
298 F. Supp. 3d 1285 (N.D. Cal. 2018)....13

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....6, 13

*Stewart v. Blue Cross/Blue Shield of Nev.*,
81 F. App'x 904 (9th Cir. 2003)....8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)....6

*Tillman v. Tillman*,
825 F.3d 1069 (9th Cir. 2016)....13

**Statutes**

9 U.S.C. § 2....6

9 U.S.C. § 3....6, 7, 13

9 U.S.C. § 4....7

**Other Authorities**

AAA Consumer Arbitration Rule R-2 ....................3

AAA Consumer Rule 2 ....................7, 9

AAA Consumer Rule 3 ....................7, 8, 9

AAA Consumer Rule 7(a) ....................4, 12

*Gary B. Born, International Arbitration: Law and Practice* (Kluwer Law International 3d. ed. 2021) ....................9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Robin Savage's claims against Defendant Retail Services & Systems, Inc. ("Total Wine") cannot proceed in court and must be compelled to individual binding arbitration. Savage agreed to arbitrate her disputes with Total Wine in at least two different ways, which both preclude her from proceeding with this lawsuit now.

First, Savage agreed to arbitration by deliberately submitting her claims against Total Wine to a prior arbitration, invoking Total Wine's February 2024 Terms and Conditions ("February 2024 Terms"), including their arbitration provision, as the basis for initiating arbitration. Although she then contended that the purpose of her arbitration was a determination that her claims were *not* arbitrable, Savage waived that argument by identifying the February 2024 Terms as the contract containing an agreement to arbitrate to initiate the arbitration. Savage further consented to arbitration by her conduct in voluntarily bringing and materially participating in that arbitration, and is now estopped to controvert arbitration. Critically, Savage is now barred from proceeding in court because she failed to seek a determination of arbitrability from a court during the period allowed by the arbitrator.

Second, Savage was on constructive notice of the Terms' arbitration agreement. She has been a Total Wine loyalty account holder since 2016, when she affirmatively checked a box agreeing to Total Wine's Terms and Conditions ("Terms"). Those Terms expressly provided that continued use of the Total Wine website (the "Website") is acceptance of future amendments. In May 2024, Total Wine gave email notice to Savage directly explaining its changes to the Arbitration Agreement (which require mandatory binding individual arbitration) with a hyperlink to the Terms. In November 2024, Total Wine again gave direct notice to Savage that Total Wine had updated its Terms and encouraged Savage to review them. By her agreement to future changes in the Terms, direct and constructive notice of the arbitration agreement, her continued use of the Website, and maintaining her Total Wine loyalty program account, Savage agreed to the updated Terms and mandatory arbitration of her disputes with Total Wine.

Additionally, the Arbitration Agreement expressly delegates the question of arbitrability to

the arbitrator and precludes Savage from proceeding with her claims in court.

Finally, if the Court finds that Savage may proceed with her claims, but only through individual arbitration, this action must be stayed pending arbitration of Savage's claims to avoid prejudice to Total Wine, including the risk of overlapping issues and inefficiency.

In the alternative, if the Court determines that Savage has not agreed to arbitrate, then Savage's claims must be severed and transferred to Maryland to be prosecuted under Maryland law because Savage indisputably agreed to this under the 2015 Terms and every version thereafter.

## II. STATEMENT OF FACTS

### A. Savage Voluntarily Initiates and Participates in the Prior Arbitration

On January 13, 2025, Savage voluntarily initiated an individual arbitration against Total Wine with AAA. Savage submitted a "Consumer Demand Arbitration Form," which states: "Complete this form to start arbitration under an arbitration agreement in a contract." Ord Decl., Ex. A, at 1. Savage identified the 2024 Terms as the contract containing the arbitration agreement to invoke the jurisdiction of the AAA and commence the arbitration. *Id.;* Compl., Ex. B, ¶ 9. Remarkably, however, Savage then contended that the purpose of her arbitration was a determination that her claims are *not arbitrable*. Compl., Ex A, Ex. B, ¶¶ 10-12. Even so, Savage thereafter materially participated in the arbitration, including an approximately five-month process of selecting an arbitrator and a Preliminary Case Management Hearing. Ord Decl. ¶ 3.

Although Savage purported to arbitrate only arbitrability, that is not what she did. In her Complaint and Demand for Arbitration (the "Demand"), Savage laid out her underlying allegations against Total Wine concerning the allegedly defective Cookie Banner, and then incorporated them by reference into her cause of action in the arbitration. Compl., Ex. A, ¶¶ 4-7, 22, Ex. B, ¶¶ 6, 13, 30. Thus, Total Wine contended that Savage agreed to arbitrate the entirety of her dispute with Total Wine, not just arbitrability. Ord Decl. ¶ 3. Further, Total Wine contended Savage's invocation of the 2024 Terms to commence the arbitration, voluntary submission of her dispute to arbitration, and material participation in the arbitration each separately constituted agreement to arbitrate, regardless of whether Savage had previously agreed to arbitration under any version of the Terms. *Id.* Total Wine did not contest arbitrability, paid arbitration fees to

AAA, and participated in the arbitration. *Id.*

On March 9, 2026, the arbitrator issued an order (*see generally* Compl., Ex. B) finding that he did not have jurisdiction to decide whether the parties formed an agreement to arbitrate. Compl., Ex. B, ¶ 31. The arbitrator stayed proceedings for 90 days to allow either party to seek a court determination of whether there was an agreement to arbitrate. *Id.* at ¶¶ 31-33. The 90-day period lapsed, and Total Wine contended that Savage's time for judicial intervention had expired under AAA Consumer Arbitration Rule R-2. Compl., Ex. C, at 1 ¶ 4. In the following status hearing, Savage "[sought] a dismissal without prejudice to the re-filing of the arbitration if she is able to obtain a Court order allowing her to proceed with arbitration." *Id.* ¶ 6. The arbitrator noted that no court had ruled on whether an agreement to arbitrate existed and dismissed the arbitration "without prejudice to its being refiled in the event that the Court orders the arbitration to proceed or grants [Savage] leave to re-file her demand for arbitration." *Id.* at 2 ¶ 8.

Instead, on June 26, 2026, Savage filed this lawsuit, which she premised not on a determination about arbitrability but rather on her underlying claims against Total Wine.

**B. <u>The Total Wine Website</u>**

Total Wine owns and operates the Website. Compl. ¶ 9. On the Website, users "browse and obtain information regarding wines, spirits, beer, and other alcoholic beverages, search for products, compare product offerings, locate Defendant's retail stores, and review pricing and promotions." Compl. ¶ 32. Use of the Website is governed by the Terms, which have been updated over time, including addition of an agreement to mandatory arbitration and a class action waiver. Declaration of Matthew Vorcheimer ("Vorcheimer Decl.") ¶¶ 10-12, 14-19.

**C. <u>Savage Creates an Online Account and Accepts the Terms</u>**

On February 12, 2016, Savage created an online account with Total Wine. Compl., Ex. B, at 1 ¶ 2; Vorcheimer Decl. ¶ 5. To create the account, Savage had to check a box acknowledging and agreeing to the then-prevailing 2015 Terms (the "2015 Terms"). Vorcheimer Decl. ¶ 6. If a customer declined to click the consent box, the system would not allow the customer to continue or complete the online account registration. *Id.* ¶ 6. Savage could not have created her account in 2016 without clicking the consent box and agreeing to the Terms. *Id.* ¶¶ 6, 8. The existence of

Savage's account confirms that she did click the consent box. *Id.* ¶ 6.

Under the 2015 Terms, Savage: (1) agreed that use of the Website was subject to the Total Wine Privacy Policy, which is part of the Terms; (2) submitted to the personal jurisdiction of Maryland courts for "all disputes arising from or related to" her use of the Website; (3) agreed to Maryland law for all disputes; and (4) acknowledged that "[b]y using [RSSI's] Web site [she] AGREE[D] TO BE BOUND BY THESE TERMS OF SERVICE, and all the terms, conditions, disclaimers and limitations that appear or are made available to you on our site . . . as they may be amended from time to time." Compl., Ex. B, at 1; Vorcheimer Decl., Ex. D, at 1. The 2015 Terms also provided: "We reserve the right to modify our Agreement with you, including, without limitation, these Terms of Service at any time. Your continued use of any portion of our Web site following the effective date contained in the notification or the posting of such changes on our Web site if no other effective date is specified, will constitute your acceptance of those changes." Vorcheimer Decl. ¶ 20, Ex. D, at 1. Every version of the Terms since 2015 has included substantially similar language. *Id.* ¶ 20.

### D. <u>Total Wine Adds an Arbitration Clause and Class Action Waiver</u>

In 2020, Total Wine updated its Terms (the "2020 Terms") to include an arbitration provision requiring all users to submit any dispute related to the use of the Website to "BINDING INDIVIDUAL ARBITRATION" and a class action waiver specifying that arbitration is to proceed "INDIVIDUALLY AND NOT AS PART OF A CLASS ACTION." Vorcheimer Decl. ¶ 12, Ex. F, at 2, 14; Compl., Ex. B, at 1 ¶ 3. The Arbitration Agreement incorporates the AAA Consumer Arbitration Rules, which state "[t]he arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence[,] scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." Compl., Ex. B, at 8-9 ¶ 26(a) (quoting AAA Consumer Rule 7(a)).

Total Wine implemented another update to the Terms in October 2022 (the "October 2022 Terms"). Compl., Ex. B, at 1 ¶ 6. These October 2022 Terms were in effect when Savage visited the Website in November 2023. *See id.* The October 2022 Terms stated: "Accessing the Sites, in any manner, whether automated or otherwise, constitutes use of the Site and your agreement to

be bound by these Terms & Conditions." Vorcheimer Decl. ¶ 14, Ex. G, at 1. The October 2022 Terms also included a paragraph advising users like Savage to "PLEASE READ THESE TERMS CAREFULLY. THESE TERMS INCLUDE AN AGREEMENT TO MANDATORY AND BINDING ARBITRATION, WHICH MEANS THAT YOU AGREE TO SUBMIT ANY DISPUTE RELATED TO YOUR USE OF ANY OF THE SITES TO BINDING INDIVIDUAL ARBITRATION RATHER THAN PROCEED IN COURT." *Id.* ¶ 14, Ex. G, at 1-2.

On May 19, 2024, Total Wine further updated its Terms. *See* Compl., Ex. B, at 2 ¶ 7; Vorcheimer Decl., Ex. I. Total Wine sent an email to all customers with accounts, including Savage at robinsavage06@gmail.com, notifying them of the updates. Vorcheimer Decl. ¶¶ 16-17. The email stated that Total Wine has "updated Total Wine's Terms & Conditions" including "[c]hanges to [Total Wine's] dispute resolution procedures, which include mandatory arbitration and waiver of jury trials," and Total Wine "***strongly encourage[d]*** [customers] to take a few minutes to review [the] updated Terms & Conditions." *Id.* ¶¶ 16-17, Ex. I, at 1 (emphasis added). The email also stated that "[b]y continuing to use our website, services, and Loyalty Program, you're agreeing to be bound by the updated terms and conditions." *Id.* Similarly, on November 1, 2024, Total Wine updated its Terms (*see id.*, Ex. L) and sent another email to all active customers, including Savage at robinsavage06@gmail.com, informing them that Total Wine "has updated [its] **Terms and Conditions** of Use and Services for the Total Wine Website and stores," and "encourage[d] [customers] to review them." Vorcheimer Decl. ¶ 18, Ex. K, at 1.

### E. Total Wine Updates Its Cookie Banner

Since 2022, the Website has displayed a cookie banner ("Cookie Banner"). Compl. ¶ 35, Vorcheimer Decl. ¶ 13. The Cookie Banner, titled "Privacy Notice," provides a Privacy Policy hyperlink, a "Cookie Settings" hyperlink, and "Reject All" and "Accept" Buttons. Compl. ¶ 35. The Privacy Policy hyperlink is bolded and underlined, and the Cookie Banner tells users to review the link due to changes that may affect their privacy rights. *See id.* ¶¶ 1, 35. Clicking on the Privacy Policy hyperlink leads customers to the Privacy Policy within the Terms. Vorcheimer Decl. ¶¶ 13-14, Exs. F and G; Compl., Ex. B, at 1. The Terms have included an arbitration agreement and class action waiver since 2020. Vorcheimer Decl. ¶ 12.

### F. Savage Re-Visits the Website in 2023

Savage re-visited the Website in 2022 or November 2023.[1] She clicked the "Reject All" button on the Cookie Banner. *Id.* ¶ 89. Despite the bolded and underlined hyperlink to the Privacy Policy within the Terms, Savage claims she "did not see" and "could not have seen" the link or the Terms. Compl. Ex. A, ¶ 21.[2] This visit allegedly gave rise to Savage's claims.

## III. ISSUES TO BE DECIDED

A. Has Savage agreed to arbitration by her conduct in the prior arbitration?

B. Has Savage waived her ability to seek judicial intervention regarding arbitrability?

C. Has Savage agreed to arbitration through constructive notice of the Terms?

D. Should this action be stayed pending arbitration of Savage's claims?

E. If Savage's claims are not arbitrable, should they be severed and transferred because she agreed to Maryland law and venue?

## IV. LEGAL STANDARD

Under the FAA, written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *see also Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185 (2019) ("[B]enefits of private dispute resolution [include] lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes") (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010)). If a court compels arbitration in a dispute filed in federal court, the FAA requires that the court stay the litigation pending arbitration. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478–79 (2024).

The FAA is mandatory and does not allow courts to delve into policy considerations

[1] In the Complaint, Savage alleges she re-visited the Website "in or around 2022 and November 2023." Compl. ¶ 86. In the arbitration, Savage alleged her visit was November 2023. Compl., Ex. A, ¶ 18, Ex B, ¶ 6. To the extent there was a prior visit to the Website before 2023 where Savage interacted with the Cookie Banner and accepted the Terms, Total Wine reserves all rights.

[2] Savage is familiar with Total Wine's business practices as a former employee of its Laguna Hills, California store. Vorcheimer Decl. ¶ 22.

regarding arbitration. It "leaves no place for the exercise of discretion by a district court but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (holding "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"); *Benson v. Casa De Capri Enters., LLC*, 980 F.3d 1328, 1330 (9th Cir. 2020) ("Generally, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." (internal quotation marks omitted)).

In deciding a motion to compel arbitration, the court must limit its review to two issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). When both elements exist, "district courts shall direct the parties to proceed to arbitration" on the issues they have agreed to arbitrate. *Byrd*, 470 U.S. at 218 (citing 9 U.S.C. §§ 3, 4). Regarding the second element, where, as here, the parties have delegated threshold arbitrability questions to the arbitrator, the court must honor that agreement and allow the arbitrator to decide arbitrability, including the enforceability and scope of the arbitration agreement. *Brennan*, 796 F.3d at 1130.

## V. <u>ARGUMENT</u>

### A. <u>Savage Agreed to Arbitration by Invoking the Terms to Initiate Arbitration</u>

Savage agreed to arbitration by her representations to the AAA that the February 2024 Terms contained her agreement to arbitrate with Total Wine, a precondition to initiating arbitration. Savage filled out the AAA's Demand Form, which states "*Complete this form to start arbitration under an arbitration agreement in a contract*." Ord Decl., Ex. A, at 1 (emphasis added). Savage identified the February 2024 Terms as the agreement to arbitrate by attaching "*a clear, legible copy of the contract* containing the parties' agreement to arbitrate disputes" to the Demand Form. *Id.* at 2. In doing so, Savage initiated her dispute under the then-effective AAA Consumer Rules, including Rule 2, which governs disputes arising from an arbitration agreement. *See* Ord Decl., Ex. B, at 11-13. Alternatively, she invoked AAA Consumer Rule 3 (which governs agreements to arbitrate

absent an arbitration agreement) by filing the Demand with the February 2024 Terms, and asserting that the Terms contained an agreement to arbitrate. *See* Demand Form, Section 7, p. 2, and Demand; Ord Decl., Ex. B, at 13 (AAA Consumer Rule 3) ("If the consumer and business do not have an arbitration agreement or their arbitration agreement does not name the AAA, the parties may agree to have the AAA arbitrate their dispute."). AAA relied on Savage's representation in the Demand Form that the parties had an agreement to arbitrate to commence arbitration. Total Wine appeared, paid arbitration fees, and did not contest arbitrability. Regardless of whether Savage's conduct reflected a pre-existing agreement to arbitrate under the Terms, or a fresh agreement to arbitration, her submission of the Terms as the basis for initiating arbitration is dispositive of her agreement to arbitrate. Savage is now estopped from controverting her agreement to arbitrate with Total Wine. *See Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994) ("On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute.") (citation and quotation omitted).

**B. <u>Savage Agreed to Arbitration by Voluntarily Initiating Arbitration</u>**

Savage also consented to arbitration by voluntarily initiating arbitration with AAA. It is well-established that a party initiating arbitration consents to the arbitration. *See e.g.*, *Stewart v. Blue Cross/Blue Shield of Nev.*, 81 F. App'x 904, 905 (9th Cir. 2003) ("As the party who initially requested arbitration, [plaintiff] has waived the right to challenge the enforceability of the arbitration provision . . . ."); *Nghiem*, 25 F.3d at 1440 ("[T]he party's 'voluntary initiation of arbitration can be interpreted as a waiver of any objection he may have had over the authority of the arbitrator.'"); *Garcia v. Amazon.com Servs. LLC*, 2021 WL 2954088, at *5 (C.D. Cal. May 25, 2021) ("[D]emanding arbitration is inconsistent with objecting to arbitration"); *Collier v. New York*, 2006 WL 8442757, at *6-7 (C.D. Cal. Nov. 1, 2006) (By initiating arbitration, the plaintiff is foreclosed from arguing that the arbitration contract was void). Savage cannot initiate arbitration (consistent with the AAA Consumer Rules) and then perversely claim she was never required to arbitrate. "[I]t is the initiation of arbitration . . . which renders the arbitration process binding." *Roderick v. Mazzetti & Assocs.*, 2004 WL 2554453, at *5 (N.D. Cal. Nov. 9, 2004).

**C. Savage Agreed to Arbitration by Prosecuting Her Arbitration**

Savage's subsequent prosecution of the arbitration she initiated is also consent to arbitrate. In fact, "an agreement to arbitrate an issue need not be express; however, it may be implied from the conduct of the parties." *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1356 (9th Cir. 1983); *accord Gvozdenovic v. United Air Lines, Inc*., 922 F.2d 1100, 1105 (2d Cir. 1991) ("Although a party is bound by an arbitral award only where it has agreed to arbitrate, an agreement may be implied from the party's conduct"); *see also Gary B. Born, International Arbitration: Law and Practice* (Kluwer Law International 3d. ed. 2021), 82 ("A party's commencement of arbitral proceedings, or its participation without protest in such proceedings, can be the basis for finding valid consent to an arbitration agreement."). Here, Savage materially participated in the arbitration through an approximately five-month arbitrator-selection process, multiple hearings, and briefing during the course of one and a half years. This conduct independently is consent to arbitrate and consistent with AAA Consumer Rules 2 and 3.

Savage cannot, on one hand, represent that there is an agreement to arbitrate to initiate her arbitration, and simultaneously aver that there was no agreement to get out of the arbitration. Savage's gambit is no different than a plaintiff initiating litigation in one court pursuant to a forum selection clause only to then seek relief from that court by arguing that the dispute actually belongs in a different forum because there was no agreement to that forum clause. By her conduct, Savage accepted and ratified her agreement to arbitrate, and cannot controvert it now. *See Nghiem*, 25 F.3d at 1440; *Collier v. SP Plus Corporation*, 889 F.3d 894, 897 (7th Cir. 2018) (questioning "dubious strategy" of party who bears the burden of establishing jurisdiction in invoking jurisdiction only to contend jurisdiction is lacking, which may be sanctionable).

**D. Savage Waived Her Ability to Seek Judicial Intervention on Arbitrability**

In his March 9, 2026 order, the arbitrator ordered that the arbitration "be stayed pending a decision by one or both of the parties whether to seek a judicial determination of the issue whether an arbitration agreement was formed and, if so, the scope of such an agreement." Compl., Ex. B, at 10 ¶ 31. Savage did not take any action during the 90-day period. She then represented that "[she] is amenable to a dismissal of this arbitration without prejudice while she seeks relief from

the Court for purposes of going forward with the arbitration." Compl. Ex. C, at 1 ¶ 5. But that is not what Savage did. Savage instead filed this class action lawsuit, rather than merely seeking a judicial determination of whether her claims are arbitrable. But Savage failed to timely seek judicial intervention under the 30-day AAA default period or the 90-day period the arbitrator provided. In failing to act within the time permitted, Savage waived her ability to seek judicial intervention on arbitrability and is now barred from proceeding with her arbitration or this action.[3] *See Nghiem*, 25 F.3d at 1440; *Daniel*, 724 F.2d at 1357.

**E. <u>Savage Agreed to Arbitration Because She Was on Constructive Notice of the Terms and the Arbitration Agreement</u>**

Savage also had direct and constructive notice of the arbitration agreement in the February 2024 and November 2024 Terms because, as a Loyalty Program member, she received two emails from Total Wine in 2024—May 19 and November 4—informing her of the updates.

Courts find constructive notice of an arbitration agreement under similar circumstances. For example, in *Ghazizadeh v. Coursera, Inc.*, the plaintiff agreed to the defendant's terms in 2015, which, at the time, did not contain an arbitration agreement. 737 F. Supp. 3d 911, 931 (N.D. Cal. 2024) (Davila, J.). The defendant subsequently updated its terms to include one, including in 2021, where "Coursera emailed all users to inform them of forthcoming updates to its TOU, including updates to the Arbitration Agreement, effective January 1, 2021." *Id.* The email also contained a "a hyperlink in blue to the updated [terms]" and provided "a brief summary of changes." *Id.* at 931-32. The court held the defendant "established that [p]laintiff was on inquiry notice of the changed terms such that they are binding on [p]laintiff." *Id.* at 932. The court reasoned that "the language in the email is reasonably conspicuous because the header clearly states that the email included updates to the [terms], the [terms] hyperlink is in blue font and stands out from the remaining text, and the hyperlink is followed by a description of the TOU which specifically calls out '[u]pdated arbitration language.'" *Id.* (citation omitted). The court

---

[3] Because Savage agreed not to pursue a class action, if Savage does proceed to arbitration, she must do so only on an individual basis. To the extent the Court finds that Savage's claims belong in court, Savage's agreement to the Terms in 2016 means Maryland choice of law and venue govern her claims.

also found that the "[p]laintiff's consent to the 2015 [terms], which contained a 'continuing use provision, combined with [p]laintiff's continued use of Coursera's services, is sufficient to demonstrate manifestation of consent to the updated terms sent directly to the email address [p]laintiff had on file with Coursera." *Id.* at 933-34.

So too here. Savage agreed to the 2015 Terms because she was required to check the box consenting to the then-existing Terms and Conditions of her online account when she created her online account. *See* Vorcheimer Decl. ¶¶ 6-9. The 2015 Terms informed Savage that "[y]our continued use of any portion of our Web site following the effective date contained in the notification or the posting of such changes on our Web site if no other effective date is specified, will constitute your acceptance of those changes and agreement to comply with all the current terms and conditions of the Agreement." Vorcheimer Decl., Ex. D, at 1. Total Wine then directly emailed Savage on May 19, 2024, informing her of updates to the Terms including "mandatory arbitration and waiver of jury trials," "strongly encourage[d] her to . . . review [the] updated Terms," and provided two hyperlinks to the Terms. *See* Vorcheimer Decl., Ex. I, at 1. Like in *Coursera*, the Terms links were reasonably conspicuous because they were in blue text, stood out from the white background and surrounding black text, and hyperlinked to the Terms containing the arbitration clause. *See id.* Again, on November 4, 2024 Total Wine directly emailed Savage about updated terms and "encourage[d] [Savage] to review" the updated Terms, Vorcheimer Decl., Ex. K, at 1, which appeared hyperlinked in bolded, underlined, green text against a white background and surrounding black text. *See id.* Critically, Savage ***did not*** cancel her Total Wine loyalty account following these direct email notices and thereby "continu[ed] to use . . . [Total Wine's] Loyalty Program," consequently "agreeing to be bound by the updated terms and conditions." Vorcheimer Decl. ¶ 21.

Savage is therefore subject to binding arbitration because she agreed to and has continued to manifest her assent to the Terms from 2016 to the present, including direct and constructive notice of the revised terms containing the agreement to arbitrate.

### F. <u>The Terms Delegate Questions of Arbitrability to the Arbitrator</u>

If there is agreement to arbitrate, the second inquiry is whether the Arbitration Agreement

encompasses this dispute. The answer is yes, but the Court need not reach it because the parties delegated arbitrability questions to the arbitrator. "[I]f a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). Here, the delegation arises through the incorporation into the Arbitration Agreement of the AAA Consumer Arbitration Rules, which explicitly state that "[t]he arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." Compl., Ex. B, at 8-9 ¶ 26(a) (quoting AAA Consumer Rule 7(a)). Virtually every circuit to have considered the issue has determined that incorporation of AAA's arbitration rules is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013); *Broomes v. FullBeauty Brands Operations, LLC*, 2025 WL 3548680, at *4 (N.D. Cal. Dec. 11, 2025) (Lin, J.) ("Under controlling Ninth Circuit law, the . . . incorporation of the JAMS rules . . . 'constitutes clear and unmistakable evidence that contracting parties agreed' to delegate the threshold question of arbitrability to the arbitrator.") (quoting *Brennan*, 796 F.3d at 1130). Thus, if this Court finds an agreement to arbitrate, it must honor the parties' agreement to delegate to an arbitrator issues of arbitrability.

Regardless, the February 2024 Terms require Savage to arbitrate all her disputes with Total Wine. Savage agreed to arbitrate "ANY DISPUTE RELATED TO YOUR USE OF ANY OF THE SITES [IN] BINDING INDIVIDUAL ARBITRATION RATHER THAN PROCEED IN COURT." Vorcheimer Decl., Ex. J, at 1-2. Savage ratified her acceptance of this requirement by submitting the merits of her underlying dispute into her arbitration demand. *See* Compl., Ex. A, at ¶¶ 4-7, 22. Any ambiguity in the scope of a contract (there is none) must also be construed in favor of arbitration. *See, e.g.*, *Mercury Constr. Corp.*, 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Morris v. Rent-A-Center, Inc.*, 2020 WL 1631203, at *3 (N.D. Cal. Apr. 1, 2020) (same). Accordingly, the Court must compel arbitration and leave further questions of arbitrability to the arbitrator.

**G. <u>The Action Should Be Stayed Pending Arbitration</u>**

Total Wine seeks a stay pending arbitration. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). A court "***shall*** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration," so long as the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3 (emphasis added); *see also Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2016) (Section 3 of the FAA is a mandate "that district courts must stay pending proceedings on issues subject to arbitration until such arbitration has been had").

Here, a stay of the entire action is appropriate because the claims of both Plaintiffs are based on the same core set of facts. Parallel proceedings would be inefficient, result in overlapping discovery and motion practice, and could result in inconsistent rulings, prejudicing Total Wine. *See Alba v. Harbor Freight Tools USA, Inc.*, 2026 WL 2161637, at *6 (N.D. Cal. July 27, 2026) (compelling arbitration to one named plaintiff and staying all proceedings in identical lawsuit by Savage's counsel); *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1304 (N.D. Cal. 2018) (compelling arbitration for some plaintiffs but staying all proceedings).

**H. <u>Savage Agreed to Maryland Choice of Law and Venue</u>**

Finally, to the extent Savage did not agree to arbitration, Savage agreed under the 2015 Terms to submit to the jurisdiction of Maryland courts under the governance of Maryland law to resolve any dispute regarding the use of the Website. *See Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1109 (N.D. Cal. 2016); Vorcheimer Decl., Ex. D, at 11 ("You agree to submit to the personal jurisdiction of the courts located in the State of Maryland, for the resolution of all disputes arising from or related to these Terms of Service, our Agreement with you and/or your use of the Site" which "Maryland and controlling U.S. federal law . . . will govern."). The Maryland venue and choice of law provision terms are in every relevant version of the Terms.

*See* Vorcheimer Decl. ¶ 20, Exs. D, at 11, F, at 14, 17, G, at 17, 19-20, J, at 17, 19-20, L, at 15, 17, 19. In this event, her claims should be severed and transferred to Maryland for adjudication under Maryland law. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."); *LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1203 (C.D. Cal. 2015) ("[F]orum selection clauses are presumptively valid and should only be set aside if the party challenging enforcement can 'clearly show that enforcement would be unreasonable and unjust.'") (citation omitted).

## VI. CONCLUSION

For the foregoing reasons, Total Wine respectfully requests that the Court compel Savage's claims to individual binding arbitration and stay this action pending arbitration, or, in the alternative, sever and transfer Savage's claims to Maryland.

Dated: August 28, 2026

DLA PIPER LLP (US)

By: /s/ *Isabelle Ord*
ISABELLE ORD
*Attorneys for Defendant*
*RETAIL SERVICES & SYSTEMS, INC.*