ISABELLE ORD (SBN 198224)
isabelle.ord@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

MATTHEW C. DANAHER (SBN 351055)
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Telephone: 858.677.1400
Facsimile: 858.677.1401

Attorneys for Defendant
RETAIL SERVICES & SYSTEMS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JEFFREY KENT and ROBIN SAVAGE, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

RETAIL SERVICES & SYSTEMS, INC.,

Defendant.

Case No. 3:26-cv-06419-RFL

**DEFENDANT RETAIL SERVICES & SYSTEMS, INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS NOTICE OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Judge: Hon. Rita F. Lin
Courtroom: Courtroom 4
San Francisco Courthouse
450 Golden Gate Avenue
17th Floor
San Francisco, CA 94102

Complaint Filed: June 26, 2026

## I. INTRODUCTION

Pursuant to Federal Rule of Evidence 201, Defendant Retail Services & Systems, Inc. ("Total Wine") respectfully requests that the Court take judicial notice of the following document in support of Total Wine's concurrently filed Motion to Dismiss:

- **Exhibit A –** Email from Plaintiffs' counsel to Total Wine giving notice of Plaintiff Kent's potential claims

This exhibit is attached to and authenticated in the concurrently filed declaration of Matthew C. Danaher. The authenticity of this document cannot reasonably be questioned for the reasons discussed below.

## II. AUTHORITY

### A. Legal Standard

Federal Rule of Evidence 201 allows the Court to take judicial notice of facts "not subject to reasonable dispute," either because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

The Court may consider extrinsic materials under the "incorporation by reference" doctrine. The "'incorporation by reference' doctrine permits a court to take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Starks v. GEICO Indemnity Co.*, 2015 WL 12942282, at *2 (Nov. 10, 2015) (citation omitted). A defendant may proceed under this doctrine "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted). Therefore, "a court may consider documents 'whose contents are alleged in a complaint' or that 'plaintiff's claim depends on,' as long as the authenticity of the document is not disputed." *Klees v. Liberty Life Assur. Co.*, 110 F. Supp. 3d 978, 982 (C.D. Cal. 2015) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706, 706 n.4; *Ritchie*, 342 F.3d at 908); Judicial notice is mandatory "if a party requests it and the court is supplied with

the necessary information." Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014).

### B. <u>The Court Should Consider Exhibit A under the Incorporation by Reference Doctrine</u>

The Court should incorporate Exhibit A, the March 20, 2025 email from Plaintiffs' own counsel to Total Wine identifying Kent as "another client" with privacy claims, because it is central to the very delayed discovery theory on which the Complaint relies. Kent alleges he "could not reasonably have discovered" Total Wine's alleged conduct until "a later investigation revealed it," Compl. ¶ 15, yet Exhibit A demonstrates Kent was aware of those claims well over a year before this lawsuit. Exhibit A also concerns Kent's allegations that Total Wine "caused cookies and tracking technologies, including those used for marketing and advertising, to be placed on Plaintiff Kent's device and/or transmitted to the Third Parties along with user data, *without Plaintiff Kent's knowledge*" (Compl. ¶ 82) and "brows[ing] the Website in reliance on the promises Defendant made in the cookie consent banner." *Id.* ¶ 83. The email is also inseparable from the arbitration chronology the Complaint pleads at length, Compl. ¶¶ 16-21, and its authenticity is beyond dispute because Kent's own counsel authored it. Incorporation by reference is therefore appropriate.

"[C]ourts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The incorporation by reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken — or doom — their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136–37 (N.D. Cal. 2015). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Promise Pub. Schs., Inc. v.*

*San Jose Unified Sch. Dist.*, 2021 WL 916903, at *5 n.5 (N.D. Cal. Mar. 10, 2021) (incorporating by reference emails between the parties during contract negotiations relevant to allegations when authenticity not challenged).

The court in *Parrino v. FHP, Inc.* confirmed that the doctrine can apply even if the document is not explicitly incorporated, reasoning that plaintiffs should not be permitted to survive a Rule 12(b)(6) motion "by deliberately omitting references to documents upon which their claims are based." 146 F.3d 699, 706 & n.4 (9th Cir. 1998). District courts have applied that expanded rule to communications that supply context for pleaded claims. In *Sebastian v. Kimberly-Clark Corp.*, 2017 WL 6497675, at *2-3 (S.D. Cal. Dec. 18, 2017), the court incorporated a CLRA notice letter that the plaintiffs referenced in the complaint, even though the letter was not attached, because the plaintiffs did not oppose the request or dispute its authenticity. In *Klees v. Liberty Life Assurance Co.*, the court held that documents are properly incorporated even when they are "implicitly referenced in the complaint" and the complaint "depends on, at a minimum," the legal relationships or events those documents establish. 110 F. Supp. 3d 978, 982 (C.D. Cal. 2015). Exhibit A satisfies this standard: it establishes the timing and circumstances under which Plaintiffs' counsel first identified Kent's potential claims to Total Wine, the very delayed discovery based upon a later investigation upon which the Complaint depends. Exhibit A is central to Kent's Complaint because Kent predicates his privacy claims upon his inability to discover whether the Website honored his opt out selections or instead continued to transmit data despite the opt out "until a later investigation revealed it." Compl. ¶ 15. For this reason, Kent invokes the delayed discovery rule to explain why he did not bring his claims sooner. *Id.*

Exhibit A is a March 20, 2025 email from Plaintiffs' counsel, Seth Safier of Gutride Safier LLP, to Robert Shaffer at Total Wine, identifying Kent as "another client" with claims arising from the same underlying claims asking whether Total Wine consents to AAA jurisdiction to decide whether Kent agreed to arbitrate, and indicating that counsel would file an arbitration or federal action depending on Total Wine's response. The email was sent while Plaintiff Savage was pursuing the related arbitration filed against Total Wine on January 13, 2025. *See* Compl. ¶¶

16–17; Ex. A. Exhibit A is integral to the Complaint's delayed discovery allegations. The Complaint alleges that Plaintiffs "could not reasonably have discovered" Total Wine's conduct because it involved hidden technical processes and that "[n]othing about [Plaintiffs'] experience would have alerted a reasonable user that their selections were not being honored." Compl. ¶ 15.

Exhibit A shows that, by March 20, 2025, Kent was aware of his potential claims against Total Wine.

The Court in *Hollis v. Farm Bureau Property & Casualty Insurance Co.*, confirms that incorporated documents may be used at the motion-to-dismiss stage to resolve timeliness issues. *See* 2025 WL 872557, at *2-3 (D.N.M. Mar. 19, 2025). The *Hollis* court incorporated a 2013 coverage-rejection document, even though the complaint focused on a 2020 renewal, because the complaint's own allegations referenced the 2013 rejection and the plaintiff's claims depended on the events it memorialized. *Id.* at *2. The court then used the incorporated document to determine when the cause of action accrued, holding that the statute of limitations "make[s] clear that the right sued upon has been extinguished" where the dates in the complaint and incorporated materials establish untimeliness. *Id.* (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). Here, the same principle applies. The Complaint invokes the delayed-discovery rule and alleges Kent could not have discovered Total Wine's conduct sooner, while Exhibit A shows that Kent was aware of his claims by March 2025.

Exhibit A is also implicitly referenced throughout the complaint. Plaintiff alleges that Total Wine was "on notice of the conduct at issue," including through the October 14, 2023 demand letter and Savage's arbitration. Compl. ¶ 22. By placing Total Wine's notice of the alleged conduct and Plaintiffs' claims squarely at issue, the Complaint makes the existence of Exhibit A, material context for the Complaint's allegations concerning notice, tolling, and the absence of prejudice. Exhibit A is also inseparable from the arbitration allegations in paragraphs 16 through 21 of the Complaint, which extensively describe Savage's January 13, 2025 arbitration and the proceedings that followed. Exhibit A was sent during that same arbitration and requests Total Wine's position on the threshold question of contract formation, and thus directly arising from

the arbitration-related issues the Complaint describes. The email is part of the same chronology and legal dispute on which the Complaint relies.

Moreover, Kent makes several allegations that Total Wine allegedly tracked him without his knowledge after clicking the "Reject All" button. *See* Compl. ¶ 80 (Plaintiff Kent believed that selecting or clicking the "Reject All" button would allow him to opt out of, decline, and/or reject "All" cookies and other tracking technologies (inclusive of those cookies that cause the disclosure of personal data to third-party marketing and advertising networks"), ¶ 82 ("Contrary to what Defendant made Plaintiff Kent believe, he did not have a choice about whether third-party cookies would be placed on his device and/or transmitted to the Third Parties along with his user data . . . ."). Thus, Exhibit A directly relates to Kent's attempt to premise liability on a lack of knowledge purportedly spanning up until the commencement of his lawsuit.

Further, Plaintiffs' own counsel authored Exhibit A, and its authenticity cannot reasonably be questioned. Importantly, Exhibit A is not an attempt to inject contested evidence into the pleading stage; its existence establishes the timeline of Kent's claims. Because the email is integral to the Complaint and its authenticity is undisputed, Plaintiffs are 'on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished.' *Parrino*, 146 F.3d at 706 n.4. Accordingly, the Court need not convert the motion to one for summary judgment. *See also Hollis*, 2025 WL 872557, at *2-3.

Consequently, the Court should incorporate Exhibit A by reference and take judicial notice of the email for purposes of considering the undisputed communication and its timing in evaluating the Complaint's allegations. Exhibit A is an authentic, contemporaneous communication that completes the chronology the Complaint itself pleads and bears directly on Kent's delayed-discovery theory, the timeliness of his CIPA claims, Total Wine's notice, and the relationship between Kent's claims and Savage's arbitration. The Court should therefore consider Exhibit A in resolving Total Wine's motion to dismiss.

## III. <u>CONCLUSION</u>

For the reasons above, Total Wine respectfully requests that the Court take judicial notice

of **Exhibit A** to the Danaher Declaration**.**

Dated: August 28, 2026

DLA PIPER LLP (US)

By: /s/ *Isabelle Ord*
ISABELLE ORD
*Attorneys for Defendant*
*RETAIL SERVICES & SYSTEMS, INC.*