**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JEFFREY KENT and ROBIN SAVAGE, as individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

RETAIL SERVICES & SYSTEMS, INC., D/B/A TOTAL WINE & MORE,

Defendant.

Case No. 3:26-cv-06419-RFL

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Date: December 8, 2026
Time: 10:00 a.m.
Judge: Hon. Rita F. Lin
Ctr: Courtroom 4, 17th Floor

TABLE OF CONTENTS


I. INTRODUCTION ........ 1
II. STATEMENT OF FACTS ........ 1
III. STANDARD OF LAW AND ARGUMENT ........ 2
  A. Plaintiffs Have Article III Standing and Plead a Concrete Injury-in-Fact ........ 3
  B. Plaintiffs' Complaint Satisfies Rule 8 ........ 5
  C. Plaintiffs Allege a Reasonable Expectation of Privacy ........ 5
  D. Plaintiffs Allege Defendant's Intrusion Was Highly Offensive ........ 6
  E. Plaintiffs' Claims Are Timely ........ 7
  F. Plaintiffs Have Adequately Pled CIPA Claims ........ 9
    *1. Plaintiffs Allege the Information Was Intercepted in Transit* ........ 9
    *2. Plaintiffs Allege "Contents" Were Intercepted* ........ 10
    *3. Plaintiffs Allege Aiding under CIPA* ........ 11
    *4. Plaintiffs Sufficiently Plead CIPA Claims Under Section 638.51* ........ 12
  G. Plaintiffs Adequately Plead Damages for Fraud and Misrepresentation ........ 13
  H. Plaintiffs' Unjust Enrichment Claim May Proceed ........ 13
  I. Plaintiffs' Request for Injunctive Relief Is Proper ........ 14
IV. PLAINTIFFS' EVIDENTIARY OBJECTIONS AND MOTION TO STRIKE ........ 15
V. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

## CASES

*Addison v. State of California*, 21 Cal. 3d 313 (1978)........................................................ 10

*Asercion v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 26-cv-02442-RFL, 2026 U.S. Dist. LEXIS 442638 (N.D. Cal. Aug. 21, 2026)........................................... 1, 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 3

*Attridge v. Google LLC*, 816 F. Supp. 3d 1059 (N.D. Cal. 2026) ..................................... 15

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990)........................................... 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 2

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020)............................................ 12, 13

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023)...................................... 4, 6, 7, 14

*Byars v. Tire*, 654 F. Supp. 3d 1020 (C.D. Cal. 2023)............................................................ 4

*Cabot v. Lectric eBikes, LLC*, No. 24-cv-06446-RFL, 2025 U.S. Dist. LEXIS 152731 (N.D. Cal. Aug. 7, 2025).................................................................................... 15

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021)............................................. 6

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) ...................................................... 3

*Cody v. Ring LLC*, No. 23-cv-00562-AMO, 2024 U.S. Dist. LEXIS 30704 (N.D. Cal. Feb. 22, 2024)........................................................................................................... 10

*D'Antonio v. Smith & Wesson Inc.*, No. 5:25-cv-03085-PCP, 2026 U.S. Dist. LEXIS 202850 (N.D. Cal. Sep. 8, 2026) ............................................................... 4, 6

*Doe v. Amgen, Inc.*, No. 2:23-cv-7448, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024) ........................................................................................................... 13

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005) ..................................................... 9

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025)..................................... 3, 6

*Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025)................................................... 3, 6, 7, 13

*Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 U.S. Dist. LEXIS 1907 (N.D. Cal. Jan. 6, 2026) ........................................................................................ 8

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1 (1994) ...................................................... 7

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ...................... passim

*In re Robinhood Cash Sweep Program Litig.*, No. 24-cv-07442-RFL, 2025 U.S. Dist. LEXIS 221786 (N.D. Cal. Nov. 10, 2025)............................................................. 15

*Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022)............................................................................................................ 10

*Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ............................ 4

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .......................................... 9

*Ortiz v. Deckers Outdoor Corp.*, No. 25-cv-09631-RFL, 2026 U.S. Dist. LEXIS 100845 (N.D. Cal. May 6, 2026) .................................................................................. 1

*Ortiz v. Deckers Outdoor Corp.*, No. 3:25-cv-09631-RFL, 2026 U.S. Dist. LEXIS 196836 (N.D. Cal. Aug. 28, 2026)................................................................................ 1

*Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2026 U.S. Dist.

LEXIS 104074 (N.D. Cal. May 11, 2026) .......... 9, 17
*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) .......... 4, 5, 8
*Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104 (S.D. Cal. 2024) .......... 10
*Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) .......... 10
*Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024) .......... 5, 14
*Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2025 U.S. Dist. LEXIS 3238 (N.D. Cal. Jan. 7, 2025) .......... 6
*Scheibe v. Perfect Keto Grp. Ltd. Liab. Co.*, 700 F. Supp. 3d 928 (S.D. Cal. 2023) .......... 15
*Selby v. Sovrn Holdings, Inc.*, 2025 U.S. Dist. LEXIS 205538 (N.D. Cal. Oct. 16, 2025) .......... 11
*Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906 (N.D. Cal. 2026) .......... 3, 6
*Shah v. Politico LLC*, 2026 U.S. Dist. LEXIS 25740 (N.D. Cal. Feb. 6, 2026) .......... 6
*Shahnaz Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565, 2025 U.S. Dist. LEXIS 26519 (S.D. Cal. Feb. 12, 2025) .......... 13
*Smith v. Rack Room Shoes, Inc.*, 2025 U.S. Dist. LEXIS 149750 (N.D. Cal. Aug. 4, 2025) .......... 14
*Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 U.S. Dist. LEXIS 354693 (N.D. Cal. Aug. 4, 2025) .......... 1
*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) .......... 15
*St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) .......... 7
*Tavernetti v. Superior Court of San Diego Cty.*, 22 Cal. 3d 187 (1978) .......... 10
*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015) .......... 13
*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .......... 17
*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 11
*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954 (9th Cir. 2010) .......... 8
*Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16, 2025) .......... 8
*Wiley v. Universal Music Grp.*, 2025 U.S. Dist. LEXIS 261303 (N.D. Cal. Dec. 17, 2025) .......... 3

**STATUTES**

Cal. Penal Code § 631(a) .......... 10
Cal. Penal Code § 638.50(b) .......... 13
Cal. Penal Code § 638.51 .......... 10
Cal. Penal Code § 638.51(a) .......... 13

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 2, 8
Fed. R. Civ. P. 23(b)(2), (b)(3) .......... 16
Fed. R. Civ. P. 8(a)(3) .......... 15

Fed. R. Evid. 201 .......... 16

## I. INTRODUCTION

Plaintiffs Jeffrey Kent and Robin Savage (collectively, "Plaintiffs") bring suit against Retail Services & Systems, Inc. d/b/a Total Wine & More ("Defendant" or "Total Wine") for aiding third parties to collect California users' private communications ***against their express instructions and Total Wine's express representation***. More specifically, when users visit Defendant's Website (www.totalwine.com, the "Website"), they are presented with a popup cookie consent banner and corresponding privacy settings which explicitly promise that users could "Reject All" cookies. Despite this promise, Defendant allowed numerous third parties—including Adobe Inc. (dpm.demdex.net and omtrdc.net), Microsoft Corporation (Microsoft Bing), Everest Technologies, Inc. (cm.everesttech.net), and Moveable Ink (c2op6nqb.micpn.com) (the "Third Parties")—to install cookies on Plaintiffs' and other Website users' devices and to collect their Private Communications on the Website. Defendant now moves to dismiss the Complaint in its entirety. Neither motion has merit.

Defendant's motion to dismiss recycles arguments this Court has rejected in numerous cases. *See, e.g., Ortiz v. Deckers Outdoor Corp.*, 2026 U.S. Dist. LEXIS 196836, at *1–2 (N.D. Cal. 2026) (Lin, J.); *Ortiz v. Deckers Outdoor Corp.*, 2026 U.S. Dist. LEXIS 100845 (N.D. Cal. 2026) (Lin, J.); *Asercion v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2026 U.S. Dist. LEXIS 442638 (N.D. Cal. 2026) (Lin, J.); *Smith v. Rack Room Shoes, Inc.*, 2025 U.S. Dist. LEXIS 354693 (N.D. Cal. 2025) (Lin, J.). Defendant does not even attempt to distinguish these cases. It simply cannot. As this Court has recognized, invasion of privacy and intrusion upon seclusion are traditionally recognized harms sufficient for Article III standing; Plaintiffs' CIPA claims are timely; nearly every court to consider materially similar claims to Plaintiffs has allowed them to proceed; and Plaintiffs adequately plead their remaining claims and their request for injunctive relief. This Court should deny the motion in its entirety.

## II. STATEMENT OF FACTS

When consumers visit the Website, Defendant "immediately display[s]" to them a popup cookie consent banner captioned as a "Privacy Notice." Dkt. 1 ¶¶ 1, 35. The banner offers users three options: they may "Reject All" cookies, "Accept" cookies, or manage "Cookie Settings."

The banner "remains displayed, obscuring the Website's main content, until users make a selection." Dkt. 1, Ex. A ¶ 14. In other words, users cannot interact with the Website until they have made a selection in the cookie consent banner. *Id.* Plaintiffs, like thousands of other users, clicked "Reject All," "thereby indicating their choice and/or agreement to decline or reject all cookies and tracking technologies in use on the Website, [and] could then continue to browse the Website, as the popup cookie consent banner disappeared." *Id.* ¶ 36. The banner "led Plaintiffs, and all [] Website users . . ., to believe that they declined or rejected 'All' cookies and tracking technologies" and that "Defendant would not allow third parties, through cookies, to access their Private Communications with the Website, nor sell their personal data." *Id.* ¶ 37. Defendant's own Privacy Policy reinforced the promise, telling users that if they did "not allow" marketing and advertising cookies and that they would "experience less targeted advertising" when rejecting cookies. *Id.* ¶ 34.

Despite its specific and repeated representations that users could reject all cookies, Defendant did not honor those rejections. It caused the installation of third party code that used third party cookies that Defendant represented Website users could opt out of. Dkt. 1 ¶¶ 3, 42–43. Defendant thereby caused the collection and dissemination of users' personal information "including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and geolocation data" (collectively "Private Communications"). *Id.* ¶ 32; *see id.* ¶¶ 30, 37. This resulted in not only the disclosure of Website users' computer data such as IP and email addresses; but specific user communications, such as search queries and search strings made on the Websites. *See id.* ¶¶ 48 (showing contents of user's search sent to Adobe), *id.* ¶¶ 53–54 (showing contents of user's search for wine). As such, Defendant's motion should be fully denied.

## III. STANDARD OF LAW AND ARGUMENT

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

**A. Plaintiffs Have Article III Standing and Plead a Concrete Injury-in-Fact**

Defendant first argues that Plaintiffs lack standing because "Plaintiffs fail to allege a cognizable injury in fact in their purported injuries." Dkt. 21 at 4. This ignores California law and every court in this district to consider this exact argument has rejected it. *Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *27 (N.D. Cal. 2025); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 868 (N.D. Cal. 2025); *Wiley v. Universal Music Grp.*, 2025 U.S. Dist. LEXIS 261303, at *6 (N.D. Cal. 2025); *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 918 (N.D. Cal. 2026).

Defendant argues Plaintiffs raise "abstract concerns" and "do not allege entering any personal information on the Website because their allegations concern only hypothetical 'Private Communications' of Website users at large." Dkt. 21 at 4. But Plaintiffs have included detailed allegations on how Defendant falsely represents that users can reject all cookies and how it still allows third party cookies to be placed on users' devices, including the representations Plaintiffs themselves saw. Dkt. 1 ¶¶ 23–33, 35–44, 79, 89. As Defendant concedes (Dkt. 21 at 5), Plaintiffs have described and shown the exact types of information Defendant allowed the Third Parties to collect. *Id.* ¶¶ 30, 39–44, 50–69. Plaintiffs then describe the actions they took on the Website which allowed Defendant to place the third party cookies on their devices despite their rejection of all cookies. *See* Dkt. 1 ¶ 77; *id.* ¶ 86. Plaintiffs both allege that Defendant caused *their* Private Communications, as defined in the complaint (*id.* ¶ 30), to be tracked and collected by Third Parties (*id.* ¶¶ 83, 92). These allegations are more than sufficient. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020).

Contrary to Defendant's argument (Dkt. 21 at 4–6), there is no requirement that Plaintiffs allege the exact information that was wrongly collected. *See, e.g.*, *D'Antonio v. Smith & Wesson*

*Inc.*, 2026 U.S. Dist. LEXIS 202850, at *7–8 (N.D. Cal. 2026) ("Plaintiffs sufficiently allege that third parties used tracking software to obtain their communications. Requiring more at the motion to dismiss stage—before discovery has been completed—would essentially require that a plaintiff be aware of the concealment so that she can simultaneously track it, all for the purpose of pleading details of the alleged violations that, at this point, are only available to the defendant."); *Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023).

Defendant next argues that the information at issue is "not sensitive or private" and that "[m]ost of the information Plaintiffs allege was collected is simply metadata" for which "internet users have no right to privacy." Dkt. 21 at 5–6. This ignores California law. Courts have routinely found that expressly promising consumers one thing and then turning around and doing the opposite supports privacy claims, particularly when it comes to tracking users' when they were expressly promised they would not be tracked. *In re Facebook Tracking*, 956 F.3d at 603 ("use of cookies to track and compile internet browsing histories" can invade users' privacy because they enable "access to a category of information otherwise unknowable and implicate privacy concerns"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 937–42 (N.D. Cal. 2023); *Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023).

*Popa v. Microsoft Corp.*, on which Defendant relies, does not require a different result. Dkt. 21 at 5. *Popa* affirmed a dismissal, but it applied—rather than displaced—the framework of *In re Facebook Tracking*, asking whether the plaintiff had "identified a close historical or common-law analogue for their asserted injury." 153 F.4th at 789. Facebook's creation of profiles from information gathered after users logged off met that standard. *Id.* So does this case. *Popa* itself confirms that harms of that kind are concrete. *Id.* at 789–91.

Defendant next argues that "Plaintiffs' conclusory allegations of diminution in value fail" and that Plaintiffs "must adequately allege 'both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market." Dkt. 21 at 6. But Defendant conflates standing and damages. Defendant's concrete invasions of Plaintiffs' privacy and autonomy interests are cognizable injuries which confers standing; valuing those injuries is different. Diminution in value is but one method for calculating Plaintiffs' injuries. *See* Dkt. 1 ¶¶

137, 149, 163–164. This is sufficient for standing. *See, e.g., Rodriguez v. Google LLC*, 2024 U.S. Dist. LEXIS 1290, at *35 (N.D. Cal. 2024) (granting motion for class certification for privacy claims when plaintiffs' damages were based on a "[u]ser's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection").

**B. Plaintiffs' Complaint Satisfies Rule 8**

Underpinning most of Defendant's motion is the false assertion that Plaintiffs "do not allege that any of their own information was actually collected or disclosed." Dkt. 21 at 7; *see also id.* at 4–5, 7–8. But Plaintiffs' complaint provides detailed factual allegations on how the Website operates, and how Defendant allows the third parties to collect user information despite users' rejection of all cookies. Dkt. 1 ¶¶ 23–33, 35–44. Plaintiffs then specifically show examples of how the cookies transmit contents of communications by way of search terms and page names in the URL. *Id.* ¶¶ 46–49, 53–54. Plaintiffs have alleged they rejected all cookies and then describe their actions, inputs, and interactions on the Website. *Id.* ¶¶ 77–85 (Plaintiff Kent's experience), 86–94 (Plaintiff Savage's experience). To require Plaintiffs to allege the exact communications that were intercepted would essentially require Plaintiffs to prove their case at the pleading stage. *Smith & Wesson Inc.*, 2026 U.S. Dist. LEXIS 202850, at *7–8; *Byars*, 654 F. Supp. 3d at 1027.

**C. Plaintiffs Allege a Reasonable Expectation of Privacy**

California's common law invasion of privacy and intrusion upon seclusion are analyzed together and require that Plaintiffs show: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook Tracking*, 956 F.3d at 606. Plaintiffs easily satisfy both requirements.

Here, Defendant set Plaintiffs' reasonable expectation ***itself*** when it stated they (and all other users) could "Reject All" cookies. Dkt. 1 ¶¶ 1, 35–44. Inherent in the offer was the recognition of the expectation of privacy in the type of data users opted out of sharing. Defendant simply duped them. Plaintiffs, who rejected all cookies, of course, had a reasonable expectation of privacy in their activities on the Website. *See Rodriguez v. Google LLC*, 2025 U.S. Dist. LEXIS 3238, at *18–19 (N.D. Cal. 2025); *Shah v. Politico LLC*, 2026 U.S. Dist. LEXIS 25740 (N.D. Cal. 2026); *Motorola*, 2025 U.S. Dist. LEXIS 133836; *Haleon*, 815 F. Supp. 3d 852; *MyFitnessPal*, 824 F. Supp. 3d 906. For these same reasons, the Court should reject Defendant's contention that

Plaintiffs fail to allege that Defendant "intentionally intruded" or that the intrusion was "an egregious breach of [] social norms." Dkt. 21 at 7. *See In re Facebook Tracking*, 956 F.3d at 601–03; *Rodriguez v. Google*, 2025 U.S. Dist. LEXIS 3238, at *17–19; *Brown*, 685 F. Supp. 3d at 937–41; *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021). None of Defendant's cases (Dkt. 21 at 10) are on point because none of them address a defendant's "surreptitious and unseen data collection." *In re Facebook Tracking*, 956 F.3d at 602.

**D. Plaintiffs Allege Defendant's Intrusion Was Highly Offensive**

Defendant's collection and disclosure of data after promising visitors it would not do so is highly offensive. *See Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26–27 (holding that promising consumers that they could reject cookies and subsequently collecting information such as IP addresses, browsing history, and user preferences, can be highly offensive); *Haleon*, 815 F. Supp. 3d at 868; *MyFitnessPal*, 824 F. Supp. 3d at 917–18; *St. Aubin v. Carbon Health Techs.*, Inc., 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. 2024); *Calhoun*, 526 F. Supp. 3d at 630. Even so, "courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is.'" *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26. The question of whether an intrusion is "highly offensive" is one that courts do not resolve on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994); *see also In re Facebook Tracking*, 956 F.3d at 606.

Ignoring its promise to Plaintiffs and users, Defendant now asserts that "[t]he [d]isclosure of 'Private Communications' is [n]ot [h]ighly [o]ffensive." Dkt. 21 at 10–11. But telling consumers one thing about their privacy and data on a Website and then turning around and doing the opposite can hardly be described as routine, particularly when it comes to tracking users' who were expressly promised they would not be tracked. *See Brown*, 685 F. Supp. 3d at 937–42.

Defendant's remaining privacy arguments fare no better. First, Defendant contends that Plaintiffs fail to allege an "intentional" invasion because the cookies were placed "due to defects in the 'Reject All Cookies' button" and the claims "rely on an alleged error." Dkt. 21 at 11. That is Defendant's characterization, not the Complaint's. Plaintiffs allege that Defendant "voluntarily

integrated 'third-party resources' from the Third Parties into its Website programming . . . pursuant to agreements between Defendant and those Third Parties," that it "has complete control over whether first-party and third-party cookies are placed on its California users' devices," that it "configured and managed which technologies loaded and transmitted data before and after a user disabled third party cookies," and that it "had access to information reflecting that user data continued to be transmitted to and processed by the Third Parties notwithstanding users' purported opt-out selections." Dkt. 1 ¶¶ 26, 33, 156, 158. Moreover, Defendant's Website continues to violate CIPA to this day so Defendant cannot simply rely on an "alleged error."

Defendant next argues that the "Cookie Banner's Functionality is Not Dispositive." Dkt. 21 at 11. In making that argument it concedes the main point: a website operator who fails to honor user opt out of tracking and cookies is a recognized "plus" factor supporting offensiveness. *Id.* (citing *Walsh v. Dollar Tree Stores, Inc.*, 2025 U.S. Dist. LEXIS 204652, at *38–39 (N.D. Cal. 2025)). That factor is present here in its strongest form, because Defendant's own banner invited the rejection it then ignored. Finally, *Popa*, 153 F.4th 784, is not to the contrary. This Court has distinguished *Popa* on the ground that it involved tracking of a plaintiff's activity on a single website rather than the cross-site profile building alleged here. *Gilligan v. Experian Data Corp.*, 2026 U.S. Dist. LEXIS 1907, *6–7 (N.D. Cal. 2026) (Lin, J.). The same holds true here. The Complaint alleges cross-site identifiers and year-long profiles maintained by the Third Parties. Dkt. 1 ¶¶ 50–51, 57, 63.

**E. Plaintiffs' Claims Are Timely**

Defendant next argues that Plaintiff Savage's CIPA and common law privacy claims, and Plaintiff Kent's CIPA claim are time-barred. Dkt. 21 at 8–10. But "in general a complaint need not anticipate the [statute of limitations] defense with allegations as to why the claims are timely," and "a claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (internal quotation marks omitted).

Here, the Complaint pleads delayed discovery rule and fraudulent concealment to toll the statute of limitations. Dkt. 1 ¶¶ 15–22. Plaintiffs allege they "could not reasonably have discovered this conduct at the time of their Website visits because it occurred through hidden, technical processes not visible to ordinary users"; that "[n]othing about Plaintiffs' experience on the Website would have alerted a reasonable user that their selections were not being honored"; that they "lacked the technical expertise and specialized tools necessary" to detect it; and that they "did not discover Defendant's conduct until a later investigation revealed it." Dkt. 1 ¶ 15; *see id.* ¶ 22 (Defendant "affirmatively represented that users could reject 'All' cookies while simultaneously concealing that such tracking would occur regardless of users' selections"). The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). Whether Plaintiffs should have discovered the tracking earlier is a factual question that cannot be resolved on the pleadings, particularly where the concealment is alleged to have been accomplished by the very representation on which Plaintiffs relied.

Plaintiff Kent's claims are timely on the face of the Complaint. Plaintiff Kent alleges visits "on one or more occasions during the last four years." Dkt. 1 ¶ 77. Nothing on the face of the Complaint establishes that every visit predates June 26, 2025, and each unauthorized interception and transmission is a discrete violation. To bridge that gap, Defendant asks the Court to incorporate a March 20, 2025 email from Plaintiffs' counsel—a document mentioned nowhere in the Complaint—for the express purpose of contradicting Plaintiffs delayed-discovery allegations. Dkt. 22 ¶ 2; Dkt. 23 at 5. That is impermissible, for the reasons set out in Section V below. Indeed, Judge Corley refused an identical request, declining to incorporate a declaration and an inter-counsel email offered to contradict a complaint's timeliness allegations, because "it is improper to [incorporate documents by reference] only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint." *Pemberton v. Rest. Brands Int'l, Inc.*, 2026 U.S. Dist. LEXIS 104074, at *6 (N.D. Cal. 2026) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018)).

Plaintiff Savage's claims are also equitably tolled by her arbitration. Equitable tolling requires "timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *Addison v. State of California*, 21 Cal. 3d 313, 319 (1978). All three are satisfied. Defendant had notice of these claims from Plaintiff Savage's arbitration demand and Defendant identifies no prejudice beyond the ordinary costs. And Plaintiff Savage acted in good faith throughout: she pursued the only forum Defendant's own Terms designated, reserved her rights in writing, obtained a ruling that a court must decide formation, and filed this action. Dkt. 1, Ex. C ¶¶ 3, 5, 8.

**F. Plaintiffs Have Adequately Pled CIPA Claims**

Plaintiffs allege two claims under CIPA. First, Plaintiffs allege a wiretapping claim under the fourth clause of Section 631(a) which makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. 2024) (cleaned up); *see* Dkt. 1 ¶¶ 125–139. This clause "can apply to internet communications." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1116 (S.D. Cal. 2024) (citing *Cody v. Ring LLC*, 2024 U.S. Dist. LEXIS 30704 (N.D. Cal. 2024)); *Javier v. Assurance IQ, LLC*, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications."). Second, Plaintiffs allege that Defendant's conduct violates CIPA § 638.51, which prohibits the unconsented installation and use of "pen registers" and "trap and trace devices." Dkt. 1 ¶¶ 140–150. Defendant's challenges to these claims are meritless.

***1. Plaintiffs Allege the Information Was Intercepted in Transit***

Preliminarily, intercepting communications while in transit certainly qualifies as a violation of CIPA, but "divulging the contents of an intercepted communication is an independent act that further intrudes on the privacy of the parties to the communication," and is also "illegal under section 631, subdivision(a)." *Tavernetti v. Superior Court of San Diego Cty.*, 22 Cal. 3d

187, 193 (1978). "This is the rule regardless of the original legality of the interception." *Id.* Defendant did both.

Defendant claims that Plaintiffs do not allege that third parties intercepted Plaintiffs' communications while in transit. Dkt. 21 at 12–13. Plaintiffs must allege that "the interception must occur contemporaneous with the sending or receipt of the message," *see Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023). Plaintiffs clearly do so here. Not only have Plaintiffs explained how third-party cookies operate, they identify specific examples of the cookies at issue that transmit data in real time. Dkt. 1 ¶¶ 50–69, 70–77.

Defendant argues that Plaintiffs offer only "generalized and conclusory remarks" about interception in transit. Dkt. 21 at 12–13. But the Complaint devotes an entire section to user communications being intercepted while in transit. Dkt. 1 ¶¶ 70–77. Plaintiffs allege that the Third Parties "operate large-scale data ingestion systems designed to receive, read, and act upon incoming data streams in real time." *See* Dkt. 1 ¶¶ 70–74. Plaintiffs provide examples of such large scale platforms which process data in flight. *Id.* ¶ 75. Plaintiffs further allege that the Third Parties "function as active interceptors that contemporaneously read and process the contents of user communications . . . in real time while those communications are in transit." *Id.* ¶ 77 (Section D). And they allege that search queries are embedded in URLs "transmitted to the Third Parties contemporaneously with the users' communications with the Website." *Id.* ¶¶ 47–49. That is more than sufficient. *Asercion*, 2026 U.S. Dist. LEXIS 442638, at *2; *Selby v. Sovrn Holdings, Inc.*, 2025 U.S. Dist. LEXIS 205538, at *9 (N.D. Cal. 2025).

***2. Plaintiffs Allege "Contents" Were Intercepted***

This Court has confirmed that the "contents" element is satisfied by allegations of the kind pled here. *Asercion*, 2026 U.S. Dist. LEXIS 442638, at *2. "Contents" means "the intended message conveyed by the communication" as distinguished from record information, and product views qualify; moreover, from an allegation that a plaintiff browsed for particular items "it can be reasonably inferred that he engaged in some form of substantive communication beyond merely visiting the website (e.g., typing in a search field, clicking on product pages)." *Id.* at *2. Plaintiffs allege interception of exactly that. Dkt. 1 ¶¶ 30, 46–49, 54; *id.* ¶ 133. Plaintiff Savage

alleges she "navigat[ed] the Website by entering search terms." Dkt. 1 ¶ 86. While Plaintiff Kent alleges he researched and compared specific products on the Website. *Id.* ¶ 77. And the Complaint demonstrates, by way of example, how the Website transmits contents through a search term and through the URL which divulges the specific product page the user was viewing on the Website. *Id.* ¶¶ 48–49; *see id.* ¶¶ 53–54.

Defendant also argues that Plaintiffs have not alleged a predicate violation by the Third Parties. But the Complaint alleges each element. It alleges an intentional tap or unauthorized connection by each Third Party through cookies Defendant caused to be placed, Dkt. 1 ¶¶ 3, 29, 39–44, 50–69, 128–131; that the interception was accomplished by a "machine, instrument, or contrivance, or in any other manner," *id.* ¶¶ 128–129; that it occurred willfully and without the consent of all parties, *id.* ¶¶ 130, 132, 135, 147; that the Third Parties "read, attempted to read, and/or learned the contents or meaning" of the communications "while the electronic communications were in transit," *id.* ¶¶ 132–133, 70–77; and that the Third Parties then "used the intercepted communications for their own purposes," *id.* ¶¶ 44, 52, 65, 134. It further alleges that Defendant "willfully aided, agreed with, employed, permitted, or otherwise caused the Third Parties to wiretap Plaintiffs and Class members." *Id.* ¶ 131.

### ***3. Plaintiffs Allege Aiding under CIPA***

Defendant next argues that Plaintiffs cannot plausibly allege that Defendant intended to enable the Third Parties' interceptions. Dkt. 21 at 12. Because "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act," *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020), "intentionally" requires only "an intentional act, defined as an act that is being done on purpose," not knowledge that the conduct is unlawful. *Shahnaz Zarif v. Hwareh.com, Inc.*, 2025 U.S. Dist. LEXIS 26519, at *20 (S.D. Cal. 2025) (quoting *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015)). Thus, courts in this Circuit regularly hold that intent under CIPA is satisfied by pleading that Defendant intentionally "enable[d] a third party's eavesdropping on or interception of the communication." *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *29. And, regardless of whether Defendant specifically intended to enable *unlawful*

conduct, courts routinely find sufficient allegations that the defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Doe*, 2024 U.S. Dist. LEXIS 144579, at *5.

Here, Plaintiffs have alleged that Defendant owns and operates the Website and chose to install the Third Party resources on the Website. Dkt. 1 ¶ 26. Plaintiffs also allege that Defendant itself "configured and managed which technologies loaded and transmitted data before and after a user disabled third party cookies," had the ability "to audit, test, configure, disable, or modify" them, and "had access to information reflecting that user data continued to be transmitted to and processed by the Third Parties notwithstanding users' purported opt-out selections." Dkt. 1 ¶¶ 156–158. Defendant cannot plausibly claim it does not know how its Website operates.

#### ***4. Plaintiffs Sufficiently Plead CIPA Claims Under Section 638.51***

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs adequately plead each element of this definition by alleging that the third-party cookies and the corresponding software code Defendant installed that allows the Third Parties to attach cookies operate as "pen registers" because they are processes that record signaling and addressing information, which is not the content of the electronic communications being transmitted from users' devices to the Website. *See, e.g.,* Dkt. 1 ¶¶ 67–70. Contrary to Defendant's argument (Dkt. 21 at 13), Plaintiffs' allegations go far beyond "IP address and user-agent information."

Defendant next argues that Plaintiffs "fail to . . . allege what 'dialing, routing, addressing, or signaling information' the Website's software purportedly collected." Dkt. 21 at 13. But Defendant again ignores Plaintiffs' plain allegations and the section titled "The Signaling and Addressing Information Intercepted by the Third Parties." Dkt. 1 ¶¶ 67–70. Defendant does not even attempt to rebut these allegations. Moreover, if Defendant is arguing that Plaintiffs plead themselves out of a pen register claim, it tacitly admits the CIPA wiretapping claims survive

because they adequately allege contents of communications. Dkt. 21 at 13 (arguing "Pen registers and trap and trace devices record or capture 'dialing, routing, addressing, or signaling information' but not the contents of a communication.").

### G. Plaintiffs Adequately Plead Damages for Fraud and Misrepresentation

Defendant cites to a single allegation and argues that Plaintiffs do not allege resulting damage because "Plaintiffs' alleged fraud damages boil down to 'diminution of the value of their private and personally identifiable information and communications.'" Dkt. 21 at 13–14. But this ignores Plaintiffs' allegations regarding invasion of protected interests, misappropriation of their information, and that their information has objective value. *See, e.g.,* Dkt. 1 ¶¶ 137, 163–164, 166, 168–169; *see also id.* ¶¶ 71–76. Plaintiffs also allege the invasion of their privacy and communications and the loss of control over their personal information, after being assured they could retain control over that information. *Id.* These are recognized, cognizable damages. Plaintiffs "have a stake in the value of their misappropriated data." *Brown*, 685 F. Supp. 3d at 940; *see also Rodriguez v. Google*, 2024 U.S. Dist. LEXIS 1290, at *35–36 (N.D. Cal. 2024); *In re Facebook Tracking*, 956 F.3d at 599, 606. And this Court has held that a plaintiff's stake in profits unjustly earned from her data is a cognizable injury "regardless of . . . whether the individual's data is made less valuable." *Smith v. Rack Room Shoes*, 2025 U.S. Dist. LEXIS 149750, *8 (N.D. Cal. 2025). Defendant's position is also self-defeating: it argues that Plaintiffs have no adequate legal remedy for damages while simultaneously arguing that *Sonner* bars equitable relief because they do have an adequate legal remedy.

### H. Plaintiffs' Unjust Enrichment Claim May Proceed

Defendant argues that *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), forecloses Plaintiffs' claims because they "must allege that [they] lack[] an adequate legal remedy." Dkt. 21 at 14. But there are no adequate remedies at law for all the relief Plaintiffs request, such as injunctive relief to prevent further harm to Plaintiffs and the public, and disgorgement of the revenues and profits Defendant wrongfully obtained. Dkt. 1 ¶¶ 114, 124, 169; Prayer for Relief F, G. As this Court has previously held, injunctive relief "would be necessary to afford Plaintiffs complete relief for the harm that they have allegedly experienced, as money damages alone cannot compensate Plaintiffs." *Attridge v. Google LLC*, 816 F. Supp. 3d 1059,

1080 (N.D. Cal. 2026) (Lin, J.). Moreover, at the pleading stage plaintiffs may plead in the alternative. Fed. R. Civ. P. 8(a)(3). This Court has twice rejected *Sonner* arguments on that basis. *Cabot v. Lectric eBikes, LLC*, 2025 U.S. Dist. LEXIS 152731, at *6 (N.D. Cal. 2025) (Lin, J.); *In re Robinhood Cash Sweep Program Litig.*, 2025 U.S. Dist. LEXIS 221786, at *6–7 (N.D. Cal. 2025) (Lin, J.). *Sonner* itself involved a plaintiff who dismissed her legal claims to avoid a jury trial; it does not bar pleading equitable remedies in the alternative. *Katz-Lacabe*, 668 F. Supp. 3d at 949 (collecting cases).

Defendant next argues that Plaintiffs failed to allege it retained a benefit because Plaintiffs purportedly failed "to allege what information of theirs was disclosed, or that Total Wine obtained or retained a benefit from such information, is fatal." Dkt. 21 at 15. But this again misstates the plain allegations as explained above.

**I. Plaintiffs' Request for Injunctive Relief Is Proper**

Defendant next argues that "the Complaint and certain allegations refer to public injunctive relief on behalf of 'the general public,' but no such claim is actually pleaded, and Plaintiffs do not pray for that relief." Dkt. 21 at 15. Plaintiffs both plead and seek that relief. The Complaint is brought on behalf of Plaintiffs, "the general public, and all others similarly situated." Dkt. 1 at 1. It alleges that "[u]nless enjoined, Defendant will continue to commit the illegal acts alleged herein," that "Plaintiffs, Class members, and the general public continue to be at risk," and that they "have no practical way to know" whether their rejection of cookies will be honored. *Id.* ¶ 139; *see id.* ¶ 138. The Prayer then requests "[a]n order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint." *Id.*, Prayer for Relief G. An injunction requiring Defendant to honor the "Reject All" button would operate prospectively for everyone who visits the Website, not only for Plaintiffs. In any event, Plaintiffs plead their claims on behalf of themselves and those similarly situated under Rules 23(b)(2) and (b)(3), Dkt. 1 ¶ 95, and Rule 8 does not require the words Defendant would prefer.

## IV. PLAINTIFFS' EVIDENTIARY OBJECTIONS AND MOTION TO STRIKE

The Danaher Declaration (Dkt. 22) offers a single document: a March 20, 2025 email from Plaintiffs' counsel referring to "another client, Jeff Kent." The Request for Judicial Notice (Dkt. 23) asks the Court to consider it under Federal Rule of Evidence 201 and the incorporation-by-reference doctrine, and Defendant is candid about why: to establish that "Kent was aware of his claims over one year before this lawsuit" and thereby defeat the Complaint's delayed-discovery allegations. Dkt. 21 at 9–10; Dkt. 23 at 5. That is the one use the doctrine forbids. "[I]t is improper to [incorporate documents by reference] only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint." *Khoja*, 899 F.3d at 1014. A document is incorporated only where "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Complaint does not mention this email, and it is not the basis of any claim. Pleading the discovery rule does not, as Defendant puts it, "open the door" to any document a defendant wishes to offer about a plaintiff's state of knowledge; if it did, every limitations defense could be tried on a motion to dismiss. Judge Corley refused an identical request in *Pemberton*, 2026 U.S. Dist. LEXIS 104074, at *6.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss in its entirety, strike the Danaher Declaration (Dkt. 22), and deny the Request for Judicial Notice (Dkt. 23). In the alternative, Plaintiffs respectfully requests that the Court grant leave to amend to cure any defects the Court identifies. See *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990). Plaintiffs' counsel has been retained by additional clients for materially identical claims and Plaintiffs intend to include their claims on amendment.

Dated: September 18, 2026

**GUTRIDE SAFIER LLP**

*/s/ Hayley A. Reynolds*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*