**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JEFFREY KENT and ROBIN SAVAGE, as individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

RETAIL SERVICES & SYSTEMS, INC., D/B/A TOTAL WINE & MORE,

Defendant.

Case No. 3:26-cv-06419-RFL

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

Date: December 8, 2026
Time: 10:00 a.m.
Judge: Hon. Rita F. Lin
Ctr: Courtroom 4, 17th Floor

TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

- A. The Website's Unenforceable Browsewrap Agreement. ..... 2
- B. Plaintiff Savage's Declaratory Arbitration and the Arbitrator's Ruling. ..... 2

III. STANDARD OF LAW ..... 3

IV. ARGUMENT ..... 3

- A. This Court, not an arbitrator, decides whether an agreement was formed, and Total Wine bears the burden of proving it. ..... 3
- B. Plaintiff Savage Never Agreed to Arbitrate. ..... 4
  - 1. Plaintiff did not have actual notice of the Terms. ..... 5
  - 2. Plaintiff had no inquiry notice of the Terms. ..... 5
  - 3. Plaintiff Savage did not agree to arbitrate, or waive judicial review, by filing her declaratory arbitration. ..... 7
- C. Plaintiff Savage Did Not Create the 2016 Account. ..... 9
- D. Defendant's Remaining Arbitration Arguments Fail. ..... 10
- E. Defendant's delegation argument cannot be reached. ..... 12
- F. The Court Should Reject Defendant's Request To Stay. ..... 13
- G. The Court Should Reject Defendant's Transfer Request. ..... 14

V. PLAINTIFFS' EVIDENTIARY OBJECTIONS AND MOTION TO STRIKE ..... 14

- A. The Vorcheimer Declaration Lacks Foundation And Cannot Carry Defendant's Burden. ..... 14
- B. The Ord Declaration's Characterizations Are Argument, Not Evidence. ..... 15

VI. CONCLUSION ..... 15

TABLE OF AUTHORITIES

**CASES**

*Ahlstrom v. DHI Mortg. Co.*, 21 F.4th 631 (9th Cir. 2021) ........ 4

*Alba v. Harbor Freight Tools USA, Inc.*, No. 26-cv-01069-BLF, 2026 U.S. Dist. LEXIS 166535 (N.D. Cal. July 27, 2026) ........ 12

*Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998) ........ 11

*Berman v. Freedom Fin. Network LLC*, 30 F.4th 849 (9th Cir. 2022) ........ 5

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ........ 13

*Broomes v. FullBeauty Brands Operations, LLC*, No. 24-cv-03558-RFL, 2025 U.S. Dist. LEXIS 257073 (N.D. Cal. Dec. 11, 2025) ........ 4, 14

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022) ........ 12

*Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025) ........ 7

*Chen v. Premier Fin. All., Inc.*, No. 18-CV-3771 YGR, 2019 U.S. Dist. LEXIS 10280 (N.D. Cal. Jan. 22, 2019) ........ 10, 11

*Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015) ........ 11

*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) ........ 4

*Colgate v. Juul Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019) ........ 4

*Douglas v. U.S. District Court*, 495 F.3d 1062 (9th Cir. 2007) ........ 11

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995) ........ 3

*Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355 (9th Cir. 1983) ........ 8

*Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 U.S. Dist. LEXIS 1907 (N.D. Cal. Jan. 6, 2026) ........ 14

*Gostev v. Skillz Platform, Inc.*, 88 Cal. App. 5th 1035 (2023) ........ 13

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) ........ 3

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019) ........ 12

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75 (9th Cir. 1987) ........ 14

*Jack v. Ring LLC*, 91 Cal. App. 5th 1186 (2023) ........ 13

*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014) ........ 3

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ........ 14

*Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855 (2016) ........ 5, 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ........ 14

*Nghiem v. NEC Electronic, Inc.*, 25 F.3d 1437 (9th Cir. 1994) ........ 8

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ........ 4

*Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279 (9th Cir. 2017) ........ 3

*Patrick v. Running Warehouse, LLC*, 93 F.4th 468 (9th Cir. 2024) ........ 13

*Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 173985 (N.D. Cal. Sep. 5, 2025) ........ 1, 5, 8

*Penning v. NVIDIA Corp.*, No. 25-cv-09160-SVK, 2026 U.S. Dist. LEXIS 113378 (N.D. Cal. May 21, 2026) ........ 12

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) .......... 5
*Sifuentes v. Dropbox, Inc.*, 2022 U.S. Dist. LEXIS 125273 (N.D. Cal. June 29, 2022) .......... 11
*Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781 (9th Cir. 2001) .......... 9
*Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077 (2024) .......... 4
*Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987 (1972) .......... 4
*Wong v. LaserAway, LLC*, No. 26-cv-00529-RS, 2026 U.S. Dist. LEXIS 157356 (N.D. Cal. July 15, 2026) .......... 12
*Youxiang Eileen Wang v. Life Ins. Co. of the Sw.*, No. 19-cv-01150-YGR, 2019 U.S. Dist. LEXIS 218563 (N.D. Cal. Dec. 19, 2019) .......... 10, 11

**STATUTES**

9 U.S.C. § 3 .......... 14

**RULES**

Fed. R. Evid. 602 .......... 15
Fed. R. Evid. 701 .......... 15
Fed. R. Evid. 901 .......... 15

## I. INTRODUCTION

Plaintiffs Jeffrey Kent and Robin Savage (collectively, "Plaintiffs") bring suit against Retail Services & Systems, Inc. d/b/a Total Wine & More ("Defendant" or "Total Wine") for aiding third parties to collect their private communications *against their express instructions and Total Wine's express representation*. When users visit Defendant's Website (www.totalwine.com, the "Website"), they are presented with a popup cookie consent banner and privacy settings which explicitly promise that users could "Reject All" cookies. Despite this promise, Defendant allowed third parties to install cookies on Plaintiffs' and other Website users' devices and to collect their Private Communications. Defendant now moves to compel Plaintiff Savage alone to arbitration, a transfer of Plaintiff Savage's claims, and for a stay of all putative class members' claims, including Plaintiff Kent who is not subject to arbitration. The motion has no merit.

The motion to compel arbitration fails at the threshold. It presumes an agreement to arbitrate that Plaintiff Savage never made. Total Wine concedes that the Terms and Conditions that she supposedly accepted when she created an online account in February 2016 did not contain an arbitration clause, and that it did not add one until 2020. Dkt. 17 at 4; Dkt. 1, Ex. B ¶ 3. It offers no evidence that Plaintiff Savage ever assented to any later version containing that clause. At most it offers two generic mass emails sent in May and November 2024—after the visits on which these claims are based—with no evidence that she received or opened either one. Nor did Plaintiff Savage waive a judicial determination of arbitrability: she contested it from the first page of her demand, and the arbitrator agreed that she "specifically reserved the right to contest" it. Dkt. 1, Ex. B ¶ 30. Judge Corley rejected the same theory on nearly identical facts. *Pemberton v. Rest. Brands Int'l, Inc.*, 2025 U.S. Dist. LEXIS 173985, at *14 (N.D. Cal. Sep. 5, 2025). And Total Wine's remaining argument—that Plaintiff Savage forfeited every forum by not suing during the arbitrator's preliminary ninety-day stay—rests on no statute, rule, or case, and contradicts the arbitrator's holding that the AAA rule it invokes "is not applicable." *Id.* ¶ 32.

## II. STATEMENT OF FACTS

### A. The Website's Unenforceable Browsewrap Agreement.

Plaintiff Savage visited the Website from California on one or more occasions during the last four years, including in or around November 2022 and November 2023. Dkt. 1 ¶ 86; Decl. of Robin Savage ("Savage Decl.") ¶ 3. The Website immediately presented her with a popup cookie consent banner offering "Reject All," "Cookie Settings," or "Accept." Dkt. 1 ¶¶ 35, 88; Savage Decl. ¶ 4. It "remain[ed] displayed, obscuring the Website's main content, until users ma[d]e a selection." Dkt. 1, Ex. A ¶¶ 14, 21. The banner "made no mention of the Website's T&C, contained no link to the T&C, and did not require the user to manifest assent to the Terms," *id.* ¶ 14, and said nothing about arbitration or about being bound by a contract. Dkt. 1 ¶¶ 12–14.

The Website's Terms were available in only one place: an inconspicuous link at the very bottom of the page, below all of the main content of the Website. Dkt. 1, Ex. A ¶¶ 2, 15. That link appeared "in small font (identical to the surrounding font)," was not set off "in a different color, font or size from the surrounding text," and was "very small and much less conspicuous than the images and text elsewhere on the Website." *Id.* ¶¶ 15–16. A user had to scroll to the bottom to find it, "with no forewarning of being bound by the Terms." *Id.* ¶ 16. And because the banner obscured the Website until a selection was made, no user could reach the footer link before choosing. *Id.* ¶¶ 15, 21.

The Website required no act of assent of any kind. There was no clickwrap, scrollwrap, or sign-in wrap—no box to check, no button reciting agreement, and no statement that clicking would manifest assent. Dkt. 1, Ex. A ¶¶ 13, 17; Savage Decl. ¶¶ 4–6. Defendant purported "to bind users to the T&C simply by their continued use of the Website." *Id.* ¶ 17. Indeed, Defendant's declarant confirms that the cookie consent banner only "referenced the Privacy Policy," not the Terms and Conditions, and that it was the *Privacy Policy* that in turn "contained a hyperlink to the Terms and Conditions." Vorcheimer Decl. ¶ 13; *see id.* ¶ 14.

### B. Plaintiff Savage's Declaratory Arbitration and the Arbitrator's Ruling.

The Website's Terms and Conditions "contain an arbitration provision that purports to require Website visitors to arbitrate disputes with Defendant before the American Arbitration

Association." Dkt. 1 ¶ 16. On January 13, 2025, Savage filed a demand with the AAA for the express and sole purpose of establishing that no such agreement existed. *Id.* ¶ 17 & Ex. A; *see id.*, Ex. A at 1 ("This Complaint and Arbitration Demand concerns one issue: whether a valid and enforceable arbitration agreement was formed between the parties . . . Claimant contends that no agreement to arbitrate was ever formed").

On March 9, 2026, the arbitrator ruled that he "does not have jurisdiction to decide the question whether an arbitration agreement was formed under the FAA, Maryland, or California Law," and that "[o]nly a court has jurisdiction to decide that question." *Id.*, Ex. B ¶ 29. He expressly rejected Total Wine's argument that Plaintiff Savage waived her right to challenge arbitrability because she "specifically reserved the right to contest" arbitrability and the waiver argument presumed the existence of an arbitration agreement. *Id.* ¶ 30.

## III. STANDARD OF LAW

"The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Formation "is determined by applying ordinary state-law principles of contract formation." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "[S]ilence alone does not constitute assent." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1290 (9th Cir. 2017). And critically, the "liberal federal policy favoring arbitration" does not apply to the threshold question of formation because it "is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010).

## IV. ARGUMENT

### A. This Court, not an arbitrator, decides whether an agreement was formed, and Total Wine bears the burden of proving it.

Every one of Total Wine's arbitration arguments presupposes an agreement to arbitrate. But as this Court has previously held, "[w]hether an agreement to arbitrate was formed is a non-delegable issue that must be decided by the courts, not by the arbitrator." *Broomes v. FullBeauty Brands Operations, LLC*, 2025 U.S. Dist. LEXIS 257073, at *5–6 (N.D. Cal. Dec. 11, 2025) (Lin, J.) (citing *Ahlstrom v. DHI Mortg. Co.*, 21 F.4th 631, 635 (9th Cir. 2021)); *see Coinbase, Inc. v.*

*Suski*, 602 U.S. 143, 148 (2024). The arbitrator reached the same conclusion and declined to proceed. Dkt. 1, Ex. B ¶¶ 29, 31; *id.*, Ex. C ¶ 7.

California law governs whether a valid arbitration agreement exists. *First Options*, 514 U.S. at 944. Here, Plaintiff Savage resided in California and accessed the Website from California, so California contract-formation principles govern the question whether an agreement was ever formed. Dkt. 1 ¶¶ 8, 88; Savage Decl. ¶ 3; *Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077, 1089–92 (2024) (holding the FAA does not preempt California law regarding consumer internet contracts).

These principles of contract formation apply with equal force where, as here, the challenged contract is formed online. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract."). But an offeree "is not bound by inconspicuous contractual provisions of which [she] was unaware, contained in a document whose contractual nature is not obvious." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972); accord *Nguyen*, 763 F.3d at 1177.

**B. Plaintiff Savage Never Agreed to Arbitrate.**

Defendant attempts to argue that Plaintiff Savage agreed to arbitrate all her claims by creating an account on its Website over a decade ago when it did not contain an arbitration clause. Dkt. 17 at 4; Dkt. 1, Ex. B ¶ 3. But this ignores California law. Contracts routinely enforce clickwrap agreements, in which website users are required to click on an "I agree" box after being presented with a list of terms and conditions of use; but are reluctant to enforce browsewrap agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen. *Nguyen*, 763 F.3d at 1175–76 (discussing clickwrap and browsewrap); *Colgate v. Juul Labs, Inc.*, 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019) (discussing modified clickwrap or sign-in wrap); *see Berman v. Freedom Fin. Network LLC*, 30 F.4th 849, 856, 868 (9th Cir. 2022). This case presents nothing more than an unenforceable browsewrap agreement.

**1. Plaintiff did not have actual notice of the Terms.**

When Plaintiff Savage visited the Website, it did not include a clickwrap, scrollwrap, or sign-in wrap agreement. Dkt. 1, Ex. A ¶¶ 2–3, 13–17; Savage Decl. ¶ 6. There was no text box or clickable button that says "I agree" to the Terms and Conditions. *Id.* ¶¶ 13, 17; Savage Decl. ¶ 6. No sign-in agreement says that clicking the sign-in button constitutes agreement to the T&C. Indeed, there is no mention or incorporation of the Terms into any agreement—i.e., the cookie banner—that a user must click. In fact, other than the inconspicuous link at the very bottom of the Website to "Terms & Conditions," there was no indication that Plaintiff Savage's use of the Website would be subject to the T&C. Dkt. 1, Ex. A ¶¶ 15–17; Savage Decl. ¶¶ 5–6. To the contrary, Plaintiff Savage was informed only that her continued use would be subject to her declination of cookies, which was false.

Judge Corley recently rejected a motion to compel with facts strikingly similar to this case. *Pemberton*, 2025 U.S. Dist. LEXIS 173985, at *9. There, the plaintiff rejected non-required cookies on the defendant's website, just like Plaintiff here. *Id.* at *3–4. The court found no actual notice because the plaintiff "attest[ed] that he did not know about the Terms of Service's arbitration terms when he visited the website." *Id.* at *9–10. The same result follows here.

**2. Plaintiff had no inquiry notice of the Terms.**

Defendant's Terms are indisputably a browsewrap agreement and much worse than those held inadequate in *Nguyen* and *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855 (2016). "[C]ourts have reached consistent conclusions when evaluating the enforceability of [browsewrap] agreements . . . , generally finding . . . [them] to be unenforceable." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 466 (2021). Courts generally reason that, because browsewrap provisions operate under the theory that the "'user accepts a website's terms of use merely by browsing the site,'" they do not show that the user took any unambiguous action to agree to the terms of use. *Id.* at 463.

"[A]n enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856. To be

reasonably conspicuous, "a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* Reasonably conspicuous notice allows a website operator to disclose "terms and conditions through a hyperlink, [but] the fact that a hyperlink is present must be readily apparent. Simply underscoring words or phrases . . . will often be insufficient to alert a reasonably prudent user that a clickable link exists." *Id.* at 857 (citing *Sellers*, 73 Cal. App. 5th at 477).

Defendant failed both requirements: it did not provide reasonably conspicuous notice of the Terms, and Plaintiff Savage took no action, such as checking a box or clicking a button that unambiguously manifested assent. *Id.* at 856; Savage Decl. ¶¶ 5–6. But here, the cookie popup banner does not incorporate or even mention the Terms and the lone "Terms and Conditions" link is buried at the bottom of the Website, nowhere near the banner. Thus, as in *Berman*, the text disclosing the Terms is "the antithesis of conspicuous" in a "font so small that it is barely legible to the naked eye" surrounded by other elements that "draw the user's attention away from the barely readable critical text." *Id.* at 856–57.

Defendant's browsewrap is much worse than those the Ninth Circuit and California courts have held inadequate. In *Nguyen*, the Ninth Circuit set forth a bright-line rule that "where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." 763 F.3d at 1178–79. The terms of use in *Nguyen* were <u>more</u> conspicuous than Defendant's Website. There, the link sat directly below or within inches of the checkout button, and on some pages was visible without scrolling. *Id.* at 1178. The Ninth Circuit still held it insufficient to create inquiry notice. *Id.*

Other courts agree. *Long* endorsed *Nguyen* and found no inquiry notice where the hyperlinks were difficult to find, criticizing even a hyperlink in "a prominent or conspicuous place" offered "without notifying consumers that the linked page contains binding contractual terms." 245 Cal. App. 4th at 863, 867. And in *Chabolla v. ClassPass Inc.*, the Ninth Circuit held notice "in the smallest font on the page" insufficient given its "distance from relevant action

items, its placement outside of the user's natural flow, and its font—notably timid in both size and color." 129 F.4th 1147, 1154, 1157 (9th Cir. 2025) (quotations omitted).

Here, the sole link to the Terms sat at the very bottom of the Website, in a font identical to the surrounding text, and the cookie banner obscured it until the user made a selection. Dkt. 1, Ex. A ¶¶ 15–16; Savage Decl. ¶ 5.

Defendant's remaining theory of inquiry notice depends on a chain of links that still does not establish that Plaintiff Savage unambiguously manifested assent to the Terms. Its declarant states that the cookie banner "referenced the Privacy Policy," and that the Privacy Policy in turn "contained a hyperlink to the Terms and Conditions." Vorcheimer Decl. ¶ 13; *see id.* ¶ 14. To reach the arbitration provision, a user would have to click a link labeled "Privacy Policy," read far enough into that policy to find a further hyperlink for the Terms and Conditions, follow it to a separate Terms and Conditions document, and locate the arbitration provision inside it. Nothing in that sequence tells the user that any of it is contractual.

That theory fails twice over. A link is not conspicuous notice of terms it does not name: a link labeled "Privacy Policy" does not alert a reasonably prudent user that binding arbitration terms lie behind it, and even a prominently displayed hyperlink is insufficient "without notifying consumers that the linked page contains binding contractual terms." *Long*, 245 Cal. App. 4th at 867; *see Berman*, 30 F.4th at 857. And Defendant never argues that the Privacy Policy incorporates the Terms by reference, though it bears the burden on formation. *Knutson*, 771 F.3d at 565.

**3. Plaintiff Savage did not agree to arbitrate, or waive judicial review, by filing her declaratory arbitration.**

Defendant argues that Plaintiff "Savage agreed to arbitration by her representations to the AAA that the February 2024 Terms contained her agreement to arbitrate with Total Wine" and by "voluntarily initiating arbitration with AAA." Dkt. 17 at 7–8. But the arbitrator rejected both of these arguments because Plaintiff Savage made clear that she filed the arbitration demand for the sole purpose of determining whether she is bound by the arbitration agreement found in the T&C. *See* Dkt. 1, Ex. A at 1; *id.*, Ex. B ¶ 30. Moreover, Plaintiff Savage pled a single cause of action in the arbitration for declaratory judgment of non-arbitrability. *Id.*, Ex. A; Savage Decl.

¶ 14. Indeed, Judge Corley has rejected this argument in *Pemberton* because the plaintiff, like Plaintiff Savage, "challenged the existence of the alleged arbitration agreement from the very outset" and "maintained no [arbitration] agreement was formed" throughout her communications with Defendant, her demand, and the arbitrator's proceeding. *Pemberton*, 2025 U.S. Dist. LEXIS 173985, at *14.

Defendant separately contends that Plaintiff Savage's participation in the arbitration—arbitrator selection, hearings, and briefing—independently manifests consent. Dkt. 17 at 8–9. It does not. Every step Defendant identifies was taken in service of the single declaratory claim she pleaded, and the arbitrator understood it that way. Dkt. 1, Ex. B ¶ 30. A party who appears solely to contest the existence of an agreement does not form one by doing so diligently.

Defendant next contends that because Plaintiff Savage did not file suit during the arbitrator's 90-day stay, she "waived her ability to seek judicial intervention on arbitrability and is now barred from proceeding with her arbitration or this action." Dkt. 17 at 10. Total Wine cites no authority for this proposition, because none exists. Its only citations—*Nghiem v. NEC Electronic, Inc.*, 25 F.3d 1437 (9th Cir. 1994), and *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355 (9th Cir. 1983)—concern waiver by litigating the merits to an award; neither addresses any deadline for seeking judicial relief.

The argument also contradicts the order on which it rests. The arbitrator held that AAA Consumer Rule R-2 "is not applicable to this Motion because we are beyond the 30-day period to seek judicial intervention," and used the 90-day figure merely as "a reasonable benchmark for the length of the initial stay," expressly "subject to extension," while observing that "court proceedings may last longer than 90 days and additional time may be needed." Dkt. 1, Ex. B ¶¶ 32–33. In any event, a private administrative rule cannot extinguish a litigant's access to an Article III court, and a party who never agreed to the AAA rules cannot forfeit rights under them. *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 788 (9th Cir. 2001) (a party that never entered into an arbitration agreement "cannot be said to have relinquished a right under a set of rules to which it never agreed.").

Defendant thus asks the Court to hold that Plaintiff Savage may neither arbitrate nor litigate. Dkt. 17 at 9–10. No court has so held, and the position is irreconcilable with the relief Total Wine seeks—compelling her to arbitration.

### C. Plaintiff Savage Did Not Create the 2016 Account.

Defendant's brief rests on the premise that Plaintiff Savage created an online account on February 12, 2016 and supposedly checked one box (but maybe two) accepting the 2015 Terms. Vorcheimer Decl. ¶¶ 5–6. On that premise, Defendant says its 2020 addition of an arbitration clause binds her because two emails in 2024 gave notice. But Defendant's evidence is inconsistent and does not show Plaintiff Savage even received the notice.

Plaintiff Savage does not recall creating an online account with Total Wine on February 12, 2016, does not recall being given or using a Total Wine Loyalty Card Number, and did not know that Total Wine contended she had an online account. Savage Decl. ¶ 7. She does not know what device was used to create the account (assuming the account was created online and not in store), whether it was a phone, a tablet, or a computer, whether it happened at her home or inside a store, or whether a Total Wine employee entered the information for her in-store or over the phone. *Id.* ¶ 8.

Indeed, Defendant's own records support Plaintiff's position. For example, Exhibit A to the Vorcheimer Declaration states that the account holder's preferred online delivery option was "In-Store Pickup" and that her preferred store location was Total Wine store #1115, at 43484 Boscell Road in Fremont, California. Vorcheimer Decl. ¶ 5, Ex. A. However, Plaintiff Savage lives in Laguna Woods, California, nearly 400 miles from Fremont. Dkt. 1 ¶ 8; Savage Decl. ¶¶ 2, 9. She does not recall ever visiting a Total Wine store in Fremont, and she has never ordered online from ***any*** store for in-store pickup. *Id.* ¶¶ 3, 9. It is telling that Total Wine could have simply produced a receipt of the purported purchase, but did not.

Defendant also fails to submit evidence to close the gap. It identifies no device, IP address, or time of registration, and nothing else confirming that the form was completed by Plaintiff Savage rather than someone else or in store. It offers instead a 2026 "re-creation" of the registration page and a database field called "Contact Consent Flag." Vorcheimer Decl. ¶¶ 7, 9,

Exs. B, C. Courts in this District require more. *Youxiang*, 2019 U.S. Dist. LEXIS 218563, at *8–9; *Chen*, 2019 U.S. Dist. LEXIS 10280, at *8–9.

Mr. Vorcheimer's declaration is also unreliable. Mr. Vorcheimer swears that Plaintiff Savage "was employed at the Total Wine store in Laguna Hills, California in 2021." Vorcheimer Decl. ¶ 22. She was not. Plaintiff Savage has never worked for Total Wine. And Mr. Vorcheimer does not submit a single document proving this sworn statement.

**D. Defendant's Remaining Arbitration Arguments Fail.**

Even accepting Defendant's faulty premise, Defendant's argument fails because it attempts to apply an arbitration clause which did not come into existence until four years after Plaintiff Savage purportedly created her online account. Dkt. 17 at 10–11. Defendant argues Plaintiff Savage was on "constructive notice of the arbitration agreement in the February 2024 and November 2024 Terms because, as a Loyalty Program member, she received two emails from Total Wine in 2024—May 19 and November 4—informing her of the updates." Dkt. 17 at 10. Defendant's formation and constructive notice theory proceeds in three steps: Plaintiff Savage checked a box accepting the 2015 Terms when she created an account in February 2016; those Terms contained a change-of-terms clause; and two emails nearly a decade later in 2024 gave her constructive notice of the later Terms containing an arbitration clause. Each step fails, and the first concession is fatal to the whole: Total Wine admits that the 2015 Terms "did not contain an arbitration agreement" and that it added one in 2020. Dkt. 17 at 4; Vorcheimer Decl. ¶ 12; Dkt. 1, Ex. B ¶ 3. The question, therefore, is not whether Savage assented in 2016; it is whether Total Wine's later unilateral modifications bound her. They did not.

Ninth Circuit law is settled. In *Douglas v. U.S. District Court*, the defendant added an arbitration clause by posting revised terms on its website. The court held the clause unenforceable against existing customers: "Even if *Douglas* had visited the website, he would have had no reason to look at the contract posted there. Parties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side. Indeed, a party can't unilaterally change the terms of a contract; it must obtain the other party's consent before doing so." 495 F.3d 1062, 1066 (9th Cir. 2007). Nor could continued use supply assent,

which "can only be inferred after he received proper notice of the proposed changes." *Id.* The court relied on *Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998), which held "a revised contract containing an arbitration clause is unenforceable against existing customers, even when they are given notice by mail." *Douglas*, 495 F.3d at 1066–67.

Defendant offers no notice of the operative changes. There is no evidence of notice of the 2020 addition of the arbitration clause, and none of the October 2022 update that Total Wine concedes governed at the time of Plaintiff Savage's November 2023 visit. Dkt. 17 at 4. Its case rests entirely on the May 19 and November 4, 2024 emails—both sent after the conduct that gives rise to Plaintiffs' claims. Total Wine never addresses whether Terms adopted in 2024 could retroactively compel arbitration of claims that accrued in 2022 and 2023, and California law is to the contrary. *See Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015).

Even taken at face value, the emails cannot establish assent. *See Youxiang Eileen Wang v. Life Ins. Co. of the Sw.*, 2019 U.S. Dist. LEXIS 218563, at *8–9 (N.D. Cal. Dec. 19, 2019) (dispute of fact as to who registered the account); *Chen v. Premier Fin. All., Inc.*, 2019 U.S. Dist. LEXIS 10280, at *8–9 (N.D. Cal. Jan. 22, 2019); *Sifuentes v. Dropbox, Inc.*, 2022 U.S. Dist. LEXIS 125273, at *7 (N.D. Cal. June 29, 2022). Defendant's declarant describes template emails "sent to customers" and "sent to all customers with web accounts," Vorcheimer Decl. ¶¶ 16, 18, and attaches specimens—not the messages as transmitted to Plaintiff Savage's email. There is no send log, no delivery or bounce record, and no open or click data for Plaintiff Savage's email address. Indeed, Plaintiff Savage does not recall ever receiving either email. Savage Decl. ¶ 12. Defendant fails to establish how Plaintiff Savage created the purported account, whether it was a mobile phone, a tablet, a desktop or laptop computer, or in-store. And Plaintiff Savage does not recall creating an account at all. Savage Decl. ¶¶ 7–8. Courts in this District require more.

The declaration is also internally inconsistent about whether the registration page had one checkbox or two, *compare* Vorcheimer Decl. ¶ 6 ("Ms. Savage had to check a box") *with id.* ¶ 8 ("There are two checkboxes at the bottom of the webpage from February 2016"), and never quotes the checkbox text or shows how the Terms were presented. Its documentary proof of assent is a database field named "Contact Consent Flag"—a field name denoting consent to be contacted,

not consent to any Terms. *Id.* ¶ 9; *see* Savage Decl. ¶¶ 7, 11–12. Plaintiffs object to this evidence and move to strike it. *See infra* § V.

Finally, Defendant does not argue that the cookie banner itself formed an agreement to arbitrate. That distinguishes the decisions on which it relies, where the banner said so expressly. *See Alba v. Harbor Freight Tools USA, Inc.*, 2026 U.S. Dist. LEXIS 166535, at *15–16 (N.D. Cal. July 27, 2026) (banner said that continuing to browse "acknowledge[s] and agree[s] to our Terms," with the link "bolded, underlined, and in red text"); *Penning v. NVIDIA Corp.*, 2026 U.S. Dist. LEXIS 113378, at *26 (N.D. Cal. May 21, 2026) (banner said the user "accept[s] our Terms of Service"). Defendant's banner says nothing of the kind; it links only to a Privacy Policy. A button labeled "Reject All" cannot manifest assent to arbitration absent explicit notice. *See Wong v. LaserAway, LLC*, 2026 U.S. Dist. LEXIS 157356, at *5–6 (N.D. Cal. July 15, 2026).

**E. Defendant's delegation argument cannot be reached.**

Defendant argues that the Court "need not reach" formation because the Terms delegate arbitrability to the arbitrator by incorporating the AAA Consumer Arbitration Rules. Dkt. 17 at 11–12. For the reasons given above, that argument is unavailable here: a delegation clause contained in the very contract whose formation is disputed cannot be enforced to decide that dispute. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (holding conditioned on "if a valid [arbitration] agreement exists"); *Ahlstrom*, 21 F.4th at 634–35; *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029–30 & n.7 (9th Cir. 2022) ("First, a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause."). This Court applied that rule in *Broomes*, and the arbitrator applied it here. Dkt. 1, Ex. B ¶¶ 18–19, 29.

In any event, Defendant identifies no delegation language in any version of the Terms; it relies solely on the incorporation of the AAA rules, quoted second-hand from the arbitrator's order. Delegation requires "clear and unmistakable" evidence. *First Options*, 514 U.S. at 944. *Brennan v. Opus Bank* held that incorporating the AAA rules supplies such evidence between sophisticated parties but expressly reserved the question for consumers. 796 F.3d 1125, 1130–31 (9th Cir. 2015). The Ninth Circuit has since confirmed that the question remains open. *Patrick v.*

*Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024). And California courts hold that incorporating the AAA or JAMS rules into consumer terms of service is not clear and unmistakable delegation. *Jack v. Ring LLC*, 91 Cal. App. 5th 1186, 1201 (2023); *Gostev v. Skillz Platform, Inc.*, 88 Cal. App. 5th 1035, 1048–51 (2023). The arbitrator so held on this very record. Dkt. 1, Ex. B ¶¶ 21–23, 27–29.

The Maryland choice-of-law clause does not change the analysis. Defendant's declarant states that the clause appeared in every version of the Terms, Vorcheimer Decl. ¶ 20, but a contractual choice of law will not be enforced where the chosen law is contrary to a fundamental policy of California and California has a materially greater interest in the issue. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992). Plaintiff Savage lives in California, accessed the Website from California, and sues under California statutes. Dkt. 1 ¶¶ 8, 88. The *McGill* rule is a fundamental California policy, and applying Maryland law to extinguish it would work the very waiver that California law forbids.

### F. The Court Should Reject Defendant's Request To Stay.

Defendant also asks for "a stay of the entire action," including the claims of Plaintiff Kent, whom it does not contend agreed to arbitrate anything. Dkt. 17 at 13. It concedes it has no basis to compel Kent, "reserv[ing] the right" to do so "based on information that may be disclosed in the lawsuit." Dkt. 21 at 3. Section 3 of the FAA cannot supply that stay, which by its terms applies only where an "issue … referable to arbitration under an agreement in writing" is involved. Any stay of Plaintiff Kent's claims is therefore discretionary, and Defendant has not carried its burden. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) (a stay as to non-arbitrating parties is "left to the [discretion of the] district court"); *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("the suppliant for a stay must make out a clear case of hardship or inequity").

This Court denied precisely such a stay, in precisely this kind of case, eight months ago. In *Gilligan v. Experian Data Corp.*—a putative class action under CIPA sections 631 and 638.51 arising from web tracking—the Court held that "[r]egardless of the outcome of the arbitration, Plaintiffs' claims will need to be litigated in this Court," and that a stay "would result in needless

delay, with no discernible benefit, and would not promote efficiency." 2026 U.S. Dist. LEXIS 1907, at *3 (N.D. Cal. Jan. 6, 2026). The Court took the same approach in *Broomes*, staying the case "as to Thiele-Yancy's claims only, pending the results of arbitration," while the remaining plaintiffs proceeded. 2025 U.S. Dist. LEXIS 257073, at *13.

Two further points defeat the request. First, Section 3 conditions a stay on the applicant "not [being] in default in proceeding with such arbitration." 9 U.S.C. § 3. Defendant let the arbitration lapse without ever petitioning to compel, and then asked that it be dismissed. Dkt. 1, Ex. C ¶ 4. Second, Defendant's own filings are inconsistent with a stay: it simultaneously moves to dismiss the entire Complaint on the merits and asks, in the alternative, that Plaintiff Savage's claims be severed and transferred to Maryland—which would create the very parallel proceedings and risk of inconsistent rulings it invokes.

### G. The Court Should Reject Defendant's Transfer Request.

Defendant alternatively asks that Plaintiff Savage's claims be severed and transferred to Maryland because she purportedly "agreed under the 2015 Terms to submit to the jurisdiction of Maryland courts." Dkt. 17 at 13. The request fails at the threshold because the clause it quotes is permissive, not mandatory. It provides that the user "agree[s] to submit to the personal jurisdiction of the courts located in the State of Maryland." Vorcheimer Decl., Ex. D, at 11. That is a consent-to-jurisdiction provision; it does not say that disputes must or shall be brought exclusively in Maryland. A permissive clause does not support transfer. *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77–78 (9th Cir. 1987) (transfer requires language that "clearly required *exclusive* jurisdiction"). Moreover, even if it were mandatory in the Terms, Defendant has not met its burden to prove Plaintiff agreed to the Terms.

## V. PLAINTIFFS' EVIDENTIARY OBJECTIONS AND MOTION TO STRIKE

### A. The Vorcheimer Declaration Lacks Foundation And Cannot Carry Defendant's Burden.

The Vorcheimer Declaration is the sole evidentiary basis for Defendant's claim that Plaintiff Savage assented to its Terms. However, the declaration is flawed in several aspects. First, Paragraphs 5 through 9 describe a February 12, 2016 registration process that the declarant cannot have observed; he states that he began working for Total Wine in November 2017, twenty-one

months later, and identifies no other basis for personal knowledge. Vorcheimer Decl. ¶¶ 2, 5. Fed. R. Ev*id.* 602, 701. The assertion that "[t]he existence of Ms. Savage's account confirms that she did click the consent box," *id.* ¶ 6, assumes the fact to be proved. Paragraph 7 and Exhibit B is a 2026 "re-creation" prepared by an unnamed engineer, with no code version, deployment records, or declaration from the engineer. Paragraph 9 and Exhibit C rest on a database field named "Contact Consent Flag," with no records custodian or system documentation.

Defendant also fails to show any evidence that Plaintiff Savage received email notice with the new Terms containing the arbitration clause. Paragraphs 16 through 21 and Exhibits I and K attach templates, not the messages showing transmission to Plaintiff Savage's email, and offer no send log, delivery confirmation, bounce record, or open or click data for her address. *Id.* ¶¶ 16, 18; Fed. R. Evid. 602, 901. Finally, paragraph 22 states that Plaintiff Savage "was employed at the Total Wine store in Laguna Hills, California in 2021." That is not so. And Defendant offers no employment records, no custodian, and no stated basis for personal knowledge.

**B. The Ord Declaration's Characterizations Are Argument, Not Evidence.**

The Ord declaration should likewise be struck. Paragraph 3 of the Ord Declaration recounts the parties' legal positions in the arbitration and asserts that Plaintiff Savage's conduct constituted an agreement to arbitrate. That is improper legal argument and opinion in a declaration, Fed. R. Evid. 701, and it omits the arbitrator's express rejection of this exact argument. Dkt. 1, Ex. B ¶ 30. The arbitrator's orders, attached to the Complaint as Exhibits B and C, are the reliable record.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Compel Arbitration, and its alternative requests for a stay and for transfer, in their entirety. The Court should also strike the Vorcheimer and Ord Declarations or disregard them.

Dated: September 18, 2026

**GUTRIDE SAFIER LLP**

*/s/ Hayley A. Reynolds*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*